UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:20-cv-03534-JPO

ERNIE HINES D/B/A COLORFUL MUSIC

    Plaintiff,

vs.

BMG RIGHTS MANAGEMENT (US) LLC, WARNER CHAPPELL MUSIC INC., SHAWN CARTER p/k/a JAY-Z, and TIMOTHY MOSLEY p/k/a TIMBALAND

    Defendants.
_____/

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BMG RIGHTS MANAGEMENT (US) LLC IN JOINDER WITH W CHAPPELL MUSIC CORP. d/b/a WC MUSIC CORP. f/k/a WB MUSIC CORP (INCORRECTLY NAMED IN THE COMPLAINT AS WARNER CHAPPELL MUSIC INC.), SHAWN CARTER p/k/a JAY-Z, AND TIMOTHY MOSLEY p/k/a TIMBALAND'S
MOTION TO DISMISS WITH PREJUDICE,
<u>OR IN THE ALTERNATIVE, FOR IMPOSITION OF BOND</u>**

Plaintiff ERNIE HINES D/B/A COLORFUL MUSIC, by and through his undersigned counsel, respectfully submits this Memorandum of Law in opposition to Defendants W CHAPPELL MUSIC CORP. d/b/a WC MUSIC CORP. f/k/a WB MUSIC CORP (INCORRECTLY NAMED IN THE COMPLAINT AS WARNER CHAPPELL MUSIC INC.) ("Warner"), SHAWN CARTER p/k/a JAY-Z ("Carter"), AND TIMOTHY MOSLEY p/k/a TIMBALAND ("Mosley") (collectively, Warner, Carter and Mosely shall be referred to as the "Warner Defendants") Motion to Dismiss the Second Amended Complaint with Prejudice which was joined by Defendant BMG RIGHTS MANAGEMENT (US) LLC ("BMG") (collectively, all of the Defendants referenced together shall be referred to as the "Defendants").

## PRELIMINARY STATEMENT

Plaintiff is an American soul musician. Plaintiff is also the co-author and composer of the song entitled "Help Me Put Out The Flame (In My Heart)" ("Help Me"), which was released via the famed Stax Records ("Stax") over forty (40) years ago. "Help Me" is/was an original work that the Plaintiff created and which was registered on behalf of Plaintiff with the United States Copyright Office (the "Copyright Office") in 1969. "Help Me" also has a renewal registration of EU0000154302, and a renewal and addendum registration of RE0000932464. In 1993, "Help Me" was re-released, and the re-released version of "Help Me" was also registered with the Copyright Office. It received a registration of PA 2-184-476.

The musical composition of "Help Me" and the related copyrights, as referenced above, contain a guitar riff and musical crescendo (collectively, the "Riff") at the beginning of the song/composition that were original and contain protectable elements that were created and copyrighted by Plaintiff.

Approximately five (5) years after the re-release of "Help Me", the Defendants began their willful and intentional infringement, and theft of the protectable Riff when they used it and received financial gain through the release of the musical compositions "Paper Chase" and "Toe 2 Toe". Both "Paper Chase" and "Toe 2 Toe" use the Riff and they are substantially similar to "Help Me". On information and belief, both "Paper Chase" and "Toe 2 Toe" were produced and/or created in part by Mosely, who failed willfully and intentionally released "Paper Chase" and "Toe 2 Toe" knowing that he had used the Riff and that he was infringing on Plaintiff's copyrights.

After producing/creating "Paper Chase" and "Toe 2 Toe", Mosley, on information and belief, endeavored to get other singers and song writers such as Carter to contribute to the tracks, which included the protectable Riff and which Mosley failed to receive a license or consent for. Upon, or through the commercial release of "Paper Chase" and "Toe 2 Toe", Warner and BMG acquired financial interests in "Paper Chase" and "Toe 2 Toe" and they received financial gain through the unauthorized use of the Riff in the tracks.

The Defendants got away with their brazen theft/infringement of the Riff for nearly twenty (20) years; however, the Plaintiff first discovered the use of his original song "Help Me" and the Riff in both "Paper Chase" and "Toe 2 Toe" in 2018.

Sadly, despite the fact that the Defendants were caught "red-handed" rather than accept responsibility for their infringing actions, the Defendants have turned to make the ridiculous assertions against the Plaintiff such as the fact that Plaintiff's claims are baseless despite notwithstanding the fact that the Defendants are well aware that Plaintiff's contentions are supported by at least one (1) expert witness, musicologist Joe Bennett, an expert who has even been retained in the past by Defendant Warner!

Rather than address the merits of the Plaintiff's claims, the Defendants have turned to a game of "smoke and mirrors" in which they accuse the Plaintiff of, among other things, "gamesmanship", harassment, and pursuing an "objectively unreasonable claim". The Defendants apparently also believe that because the purported damages may be *de minimis*, a fact that Plaintiff disputes, that such damages should have any bearing on the merits of Plaintiff's claims which are that the Defendants willfully and intentionally infringed upon his copyrights and did so for the purposes of benefitting themselves at Plaintiff's expense. Whether Plaintiff is ultimately awarded $100,000,000.00 or $1.00, the bottom line is Plaintiff has a right to receive a judgment against the Defendants if a jury finds, as Plaintiff expects, that the Defendants did in fact willfully and intentionally infringe on his copyrights to "Help Me". Rather than focus on the ***facts***, the Defendants attempt to distract this with irrelevant statements that have no bearing on whether they infringed upon Plaintiff's copyright.

Ironically, the Warner Defendants seek the imposition of a bond "as security for costs in order to proceed further"; however, the Defendants have only themselves to blame for such legal fees when they file frivolous motions to dismiss such as this one, which upon this Court's review of the pleadings will surely be summarily denied, or worst case, denied with leave to amend. If the Warner Defendants were worried about costs and legal fees than they would not have filed the aforementioned motion to dismiss given the legal standard and especially in light of the fact that Plaintiff's Complaint is supported by and had an expert report attached directly to it. *See* Exhibit "**A**".

Counsel for Plaintiff advised the Warner Defendants through counsel that their motion was a clear delay tactic, which can be further supported by the fact that the Warner Defendants plead in the alternative, because they know that the motion to dismiss portion of their motion will surely

fail. *See* Exhibit "**B**". Given the warning to the Warner Defendants and the opportunity they had to withdraw their motion to dismiss, attorney's fees should be awarded in the Plaintiff's favor and against the Warner Defendants given their bad-faith motives in filing the motion to dismiss. Plaintiff therefore request leave to submit a motion on fees if this Court is inclined to grant such. This Court should deny the Defendants Motion to Dismiss, and it should find that given the meritorious nature of Plaintiff's claims the imposition of a bond is not warranted; however, mediation may be.

### FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Rather than restate all of the facts in the Second Amended Complaint ("SAC") herein, Plaintiff respectfully refers the Court to the SAC for a complete recitation of the facts. For the Court's convenience; however, a summary of the facts are provided as follows:

- Hines is the co-author and composer of the song "HelpMe" which Hines registered with the United States Copyright Office. It was originally registered in 1969 and has a renewal registration of EU0000154302 and a renewal and addendum registration of RE0000932464. The song was released on Stax Records over forty (40) years ago and re-released in 1993 on The Complete Stax Volt Soul Singles. The 1993 version of "Help Me" received a registration of PA 2-184-476

- The musical composition and copyrights relating to "Help Me" contain the Riff, which consist of a guitar riff and musical crescendo that are original and protectable.

- The Riff was used in the musical composition "Paper Chase", and "Help Me" and "Paper Chase" are substantially similar. The use of the Riff in "Paper Chase" infringes on the Plaintiffs rights. Defendants Mosley and Carter are the alleged authors of "Paper Chase".

- The Riff was also used, on information and belief by Defendant Mosley in the composition "Toe 2 Toe". Defendant Mosley allegedly co-authored "Toe 2 Toe", which is substantially similar to "Help Me" and includes the Riff. Defendant BMG claims a financial/ownership interest in "Toe 2 Toe".

- The Defendants have copyrighted, used and/or benefited form the protectable elements of "Help Me" through their unauthorized use of the Riff by including it in both the compositions of "Paper Chase" and "Toe 2 Toe".

- "Paper Chase" was released on Carter's Vol. 2…Hard Knock Life – 1998 album ("HKL") an extremely commercially successful album that sold over 5 million (5,000,000) copies in the United States alone.

- The Defendants knew or should have known that "Paper Chase" contained the Riff from "Help Me" which was performed and created by Plaintiff. Due to the use of the Riff, "Help Me" and "Paper Chase" are substantially similar.

- The Defendants have amassed millions of dollars for their personal gain associated with the commercial release of "Paper Chase" through the exploitation of, among other things, records sales, downloads, and licensing.

- Hines, who is a senior citizen (83 years old) and does not listen to rap or hip-hop, was not made aware of "Paper Chase" or the Defendants use of the Riff from his original composition in "Paper Chase" until 2018.

- An entity owned by Carter, "Tidal" expressly identifies the Defendants unauthorized use of the Riff and the composition of "Help Me" and credits the Plaintiff for this contribution to "Paper Chase." *See* Complaint Exhibit "**B**".

- On information and belief, "Paper Chase" has been played millions of times through traditional, satellite and digital radio, and the Defendants have received millions of dollars through the exploitation of "Paper Chase" which includes their unauthorized and infringing use of the Riff from "Help Me".

- The Riff, which was also included in the composition "Toe 2 Toe", was featured on the release of performing artist Ginuwine on his 1999 album release "100% Ginuwine".

- Defendant Mosley is identified as one of the composers of the song "Toe 2 Toe", which contains the same protectable Riff as "Paper Chase", and which infringes on the protectable elements of "Help Me".

- BMG has a financial and ownership interest in "Toe 2 Toe" and neither Defendants BMG or Mosley ever attempted to contact Plaintiff to receive his clearance or permission to license the Riff from "Help Me".

- Defendants BMG and Mosely claim an interest in the copyright of "Toe 2 Toe".

- Defendants BMG and Mosley, jointly, have unlawfully infringed on Plaintiff's copyright and they have converted the copyright for their own use in a manner that was knowing, willful, intentional, and continuous.

- Neither Defendants BMG or Mosley ever had Plaintiff's consent to use the Riff from "Help Me", nor did they ever seek Plaintiff's consent and they would never have sought it.

- Plaintiff discovered the use of the Riff from his song "Help Me" in 2018.

- Plaintiff attached a report from an expert, musicologist Joe Bennett of Joe Bennett Music Services, whose report (the "Report") was incorporated into the Complaint by reference, and who detailed the protectable elements of "Help Me" including the Riff and who found that the Riff appeared throughout both "Paper Chase" and "Help Me". *See* Exhibit "**C**".

- The Report contains figures/notes/cord copying and the methodology indicating the infringement of Plaintiff's composition "Help Me" through the unauthorized use of the Riff.

## ARGUMENT

I. **LEGAL STANDARD**

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter [that] accepted as true, [will] state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Chambers v. Time Warner, Inc.*, 282 F.2d 147, 152 (2d Cir. 2002) (in determining a motion to dismiss under Fed. R. Civ. P 12(b)(6), this Court must construe the SAC liberally and "accept[] all factual allegations in the complaint as true, *and draw[] all reasonable inferences* in the *plaintiff's favor*") (emphasis added).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims…." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d. Cir. 1995) (internal citations omitted). Thus, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of New York*, 375 F.3d 168 (2d. Cir. 2004) (internal quotations omitted).

In ruling on a motion to dismiss, a district court ***should*** consider "the facts as asserted within the four corners of the complaint" together with "the documents attached to the complaint as exhibits, and documents incorporated in the complaint by reference." *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007). Dismissal of an action on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts, which would entitle him or her to relief." *Sweet v. Seahan*, 235 F.3d 80, 83 (2d. Cir. 2000).

### a. Copyright Claims Legal Standard

In order to sufficiently plead copyright infringement, a plaintiff must allege that "(1) [a] defendant has actually copied the plaintiff's work; and (2) [that] the copying is illegal because a substantial similarity exists between the defendant's work and the ***protectable*** elements of [a] plaintiff's work." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 441-42 (S.D.N.Y. 2012) (internal citations omitted) (emphasis added). The first element, actual copying, is demonstrated when a plaintiff shows that "'the person who composed the defendant's work had access to the copyrighted material'" and that there are similarities between the two works that are 'probative of copying.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d. Cir. 2003) (internal citation omitted).

Similarities arise to the level of being "probative of copying" when they contain protectable expression that is subject to copyright protection." *See Gaste v. Kaiserman*, 863 F.2d 1061, 1068-69 (2d. Cir. 1988). "Copying" is only actionable if it includes a further finding of substantial similarity, which "exists only when 'it is *protected* expression in the *earlier work* that was copied *and* the *amount* that was *copied* is more than *de minimis*." *Allen v. Scholastic, Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011) (emphasis added).

### II. The SAC Pleads States a Viable and Plausible Claim for Copyright Infringement

Plaintiff contends that he co-authored and composed the song "Help Me", which was registered with the Copyright Office in 1969. Plaintiff further contends that the composition for

"Help Me" and the related copyrights (of which there are three (3)) contain an original and protectable guitar riff and musical crescendo, the Riff, which is contained included in Plaintiff's copyrights.

Plaintiff further contends that the Defendants, jointly and separately, copied and included the protectable guitar riff and musical crescendo, the Riff, in two separate musical compositions: "Paper Chase" and "Toe 2 Toe". Plaintiff asserts that the Defendants' use of the Riff, which was contained in his copyrights for "Help Me" were illegal because the songs "Paper Chase" and "Toe 2 Toe" are substantially similar to the protectable elements in "Help Me". In fact, the Plaintiff asserts in his Complaint by reference of the Report, that both "Paper Chase" and "Toe 2 Toe" "sampled audio and compositional notes from ["Help Me"]. *See* Exhibit "**A**".

Additionally, Plaintiff asserts in the SAC by reference to the Report that the Riff from "Help Me" can be detected 308 times in "Paper Chase" and at least 44 times in "Toe 2 Toe"; and that the Riff is "qualitatively distinctive, and being an unaccompanied intro, could be considered a compositionally important and memorable part of "Help Me". *Id*. The Report and the SAC contend that "part of the ["Help Me"] audio recording" was sampled in "Paper Chase" and in "Toe 2 Toe" as well as "part of the ["Help Me"] composition were *copied* in "Paper Chase" and "Toe 2 Toe". *Id*.

Furthermore, the Report, which is cited by reference and attached to the SAC, supports Plaintiff's pleadings in the SAC that the Defendants "copying [of "Help Me"] is illegal because a substantial similarity exists between the [D]efendant's work and the ***protectable*** elements of [P]laintiff's work ["Help Me"]." The Report indicates that samples from "Help Me" can be heard in approximately 84% of the runtime in "Paper Chase" and throughout "Toe 2 Toe" in 100% of its

runtime! It is, or should be, without dispute that 84% and certainly 100% is not a "*de minimis*" amount and therefore the Defendants' "[c]opying" is […] actionable".

In evaluating whether to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6), this Court ***must*** accept "all factual allegations in the complaint as true, *and draw[] all reasonable inferences in the plaintiff's favor.*" This Court also should consider "the facts as asserted within the four corners of the [SAC]" together with "the documents attached to the complaint as exhibits, and documents incorporated in the complaint by reference [such as the Report]." Because Plaintiff's claims in the SAC, which if taken as true, are claims that a reasonable jury could determine in Plaintiff's favor this Court should find that in light of the SAC combined with the reference of the Report from expert Jon Bennett that the SAC survives the Defendants' Rule 12(b)(6) Motion to Dismiss.

Given the facts that the Warner Defendants were expressly warned that the SAC would survive their Motion to Dismiss, which it should, Plaintiff would respectfully request leave of this Court to submit evidence in support of a request for attorney's fees, or leave to file such request/motion against the Warner Defendants for their bad-faith in pursuing the Motion to Dismiss.

**III.   The Imposition of a Bond is Not Warranted In This Action**

This Court has broad discretion in deciding whether to require security for costs. *See Beautiful Jewelers Private, Ltd. V. Tiffany & Co.*, No. 06 CIV. 3085 KMW FM, 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008). In deciding whether to require security for costs, this Court may consider the following factors: "(1) the financial condition and ability to pay of the party at issue; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred;

and (6) compliance with past court orders." *Rice v. Musee Lingerie, LLC*, No. 18-CV-9130 (AJN), 2019 WL 2865210, at *1 (S.D.N.Y. July 3, 2019). This Court, may, but it is not required to consider each factor in every case. *See Id*.

We will analyze each factor in turn.

### a. Financial Condition and Ability to Pay

Plaintiff is an eighty-three (83) year old senior citizen. He does not actively work as he is past that stage in his life and he does not and would not have the means to support a bond. The Defendants, on the other hand, which consists of a well-known billionaire in Carter, have the financial wherewithal to not only cover the costs associated with a very expensive legal team, but to also pay any judgment awarded to Plaintiff in addition to their attorneys at the conclusion of this action. This factor should weigh in favor of Plaintiff.

### b. Non-Resident or Foreign Corporation

It is without dispute that Plaintiff is not a resident of this District; however, Plaintiff does reside in the continental United States in the State of Illinois. This factor should be permitted limited, to no, weight given the merits of Plaintiff's claims.

### c. The Merits of the Underlying Claims

Plaintiff has meritorious claims for copyright infringement as evidenced in the above paragraphs. The Plaintiff has already obtained the Report of an expert witness, whose report was incorporated by reference to the SAC. The Report and the testimony of the expert will be crucial to Plaintiff's success at trial. Ultimately, a reasonable jury could find the Report and/or the testimony of the expert credible and rule in Plaintiff's favor. This factor weighs heavily in Plaintiff's favor.

### d. The Extent and Scope of Discovery

Plaintiff asserts that it is too premature to address the scope of discovery; however, he expects it to include the typical requests for admissions, requests for production and interrogatories permitted under Federal law. This case is currently in its preliminary stages and the Defendants have not even filed an Answer yet and discovery has not even begun. This factor weighs heavily in Plaintiff's favor.

### e. Legal Costs Expected to Be Incurred

If the Defendants, and particularly the Warner Defendants continue to file baseless and frivolous motions such as the one pending before the Court than the legal costs will certainly reach insurmountable levels. If the Defendants focus on the merits of Plaintiff's claims rather than their motion practice this matter will be able to move quickly to the ultimate fact-finder, the jury.

This factor weighs in favor of Plaintiff.

### f. Compliance with Past Court Orders

To the knowledge of the undersigned the Plaintiff has complied or substantially complied with all orders of the Court in this pending action. This factor weighs in favor of Plaintiff.

Based upon a review of the six (6) enumerated factors, the imposition of a bond is not warranted.

## CONCLUSION

Based on the foregoing points and authorities, this Court should deny the Defendants' joint Motion to Dismiss, or alternatively permit Plaintiff with leave to amend as it should be clear to this Court that there are sufficient facts in this action by which Plaintiff can survive the Motion to Dismiss phase, and in the undersigned's opinion, even summary judgment. Additionally, Plaintiff

requests leave to submit evidence in support of his requests for attorney's fees based upon the Warner Defendant's bad faith intentions in filing the Motion to Dismiss when the Warner Defendants knew, or reasonably should have known, that the SAC sufficiently pled facts to survive a Rule 12(b)(6) motion to dismiss especially given the SAC's incorporation of the Report. Lastly, Plaintiff would request that this Court deny imposing any bond as such would/will prejudicially hinder Plaintiff's meritorious pursuit of justice.

**WHEREFORE** Plaintiff JANE DOE, respectfully requests that this Court enter an order denying the Defendants' joint Motion to Dismiss, deny imposing any bond on Plaintiff, and additionally, permit Plaintiff with leave to file evidence of its attorney's fees based on the Warner Defendants bad-faith intentions in filing the Motion to Dismiss. In the event this Court is not convinced by this Memorandum of Law, the Plaintiff respectfully requests that he be permitted leave to amend.

This 28th day of January 2021.        s/Andrew Williams

THE WILLIAMS LAW GROUP
Andrew Williams
*Attorney for Plaintiff*
6273 Sunset Drive, Suite D-3
South Miami, Florida 33143
Telephone: (253) 970-1683
FL Bar No. 0111817
Email: Andrew@TheWilliamsLG.com
Secondary Email:
WilliamsLawFlorida@gmail.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served on all parties or counsel of record through the CM/ECF filing portal on this 28th day of January 2021.

Dated: <u>January 28, 2021</u>        s/Andrew Williams