UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERNIE HINES,

                      Plaintiff,

-v-

W CHAPPELL MUSIC CORP., et al.,

                      Defendants.

20-CV-3535 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

In the 1960s, Ernie Hines co-authored the soul single "Help Me Put Out The Flame (In My Heart)," which opens with a three-bar guitar riff. He now brings suit against BMG Rights Management (US) LLC ("BMG"), W Chappell Music Corporation,[1] and the artists known as Jay-Z and Timbaland (together, "Defendants"), alleging that they incorporated elements of that riff into two hip-hop songs without his permission. Defendants have moved to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is denied.

**I.     Background**

The following facts, drawn from the second amended complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 38 ("Compl.").)

Ernie Hines is a soul singer who lives in Illinois. (Compl. ¶ 2.) He is the co-author and composer of "Help Me Put Out The Flame (In My Heart)," which he originally registered with the United States Copyright Office in 1969. (Compl. ¶ 7.)

This action centers on the opening of "Help Me," which features a "guitar riff and musical crescendo." (Compl. ¶ 8.) Hines alleges that this riff was used, without his permission,

---

[1] In the complaint, W Chappell Music Corporation is incorrectly named as "Warner Chappell Music Inc." (*See* Dkt. No. 65 at 7; Dkt. No. 71 at 2.)

in two hip-hop songs: "Paper Chase" and "Toe 2 Toe."  (Compl. ¶¶ 9, 10.)  "Paper Chase" was released in September 1998 on the third studio album of American rapper Shawn Carter (known professionally as "Jay-Z").  (Compl. ¶ 12.)  It was performed by Jay-Z and composed and written by Jay-Z and Timothy Mosley (known professionally as "Timbaland").  (Compl. ¶ 13.)  Timbaland also composed "Toe 2 Toe," which was released in March 1999.  (Compl. ¶¶ 19, 20.)

After hearing "Paper Chase" and "Toe 2 Toe" for the first time in 2018, Hines brought suit against Jay-Z, Timbaland, and two music companies with financial interests in the songs (BMG and W Chappell Music Corporation), alleging copyright infringement.  (*See* Dkt. No. 1; Compl.)  Defendants have moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2]

## II.    Legal Standards

### A.    12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint need not contain "detailed factual allegations," but it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In resolving a motion to

---

[2] Defendant BMG initially filed a separate motion to dismiss, in which it joined the motion filed by the other three defendants and added that the Court should dismiss Count II of the complaint — alleging copyright infringement against BMG for the composition of "Paper Chase" — because BMG lacks ownership or other rights in that song.  (*See* Dkt. No. 67; Dkt. No. 68 at 5.)  On January 29, 2021, Hines voluntarily dismissed Count II of the complaint.  (Dkt. No. 73.)  In light of that dismissal, BMG rested on its joinder.  (*See* Dkt. No. 77.)

dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

In general, a court's review at this stage "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Horizon Comics Prods., Inc. v. Marvel Ent., LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (internal citation omitted). In copyright infringement cases, however, "the works themselves supersede and control contrary descriptions of them." *Id.* (internal citation omitted).

### B. Copyright Infringement

To establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (internal citation omitted). With respect to the first prong, a plaintiff "may prove copying by direct evidence, or by showing that the defendant had access to the plaintiff's work and that the works are similar enough to support an inference that the defendant copied the plaintiff's work." *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994).

But "not *all* copying is wrongful." *Rose v. Hewson*, No. 17-CV-1471, 2018 WL 626350, at *2 (S.D.N.Y. Jan. 30, 2018) (internal citation omitted). Accordingly, the second prong requires the plaintiff to "show illegality, [which] requires a sharper focus: the court must find a substantial similarity between the *protectible* elements of the two works." *Fisher-Price*, 25 F.3d at 123. To be protectable, a work must be original, which means that it must be independently

created by the author and entail "at least some minimal degree of creativity." *Rose*, 2018 WL 626350, at *2 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). In the context of a musical composition, copyright law protects elements of a song's composition, such as "notes, rhythm, and harmony," but it does not protect "elements of performance of the composition, like the skill with which the composition is made." *Id.* at *3. In general, "individual notes and common rhythms are not protectable," but "non-banal combinations or compilations of generally unprotectable elements can be afforded copyright protection." *Id.*

As for substantial similarity, determining whether the requisite likeness exists is "one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." 4 Nimmer on Copyright § 13.03[A] (2015). The standard test "is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Rose*, 2018 WL 626350, at *3 (internal citation omitted). Where a plaintiff's work contains both protectable and unprotectable elements, however, the test is "more discerning," requiring the court to "attempt to extract the unprotectible elements from our consideration and ask whether the *protectible elements, standing alone*, are substantially similar." *Horizon*, 246 F. Supp. 3d at 941 (internal citations omitted). Even where the test is more discerning, the inquiry is "holistic." *Id.* A court must compare the contested work's "total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." *Id.* (internal citation omitted).

### III. Discussion

Defendants argue that Hines cannot state a claim for copyright infringement because he (1) "does not identify *what musical content* is allegedly contained in [the] guitar riff" or "how such musical content is protectable," (2) fails to explain how Defendants allegedly copied the riff in question, and (3) fails to establish "how the alleged copying — from a three-measure guitar

riff — is substantial enough to constitute infringement." (*See* Dkt. No. 65 at 20, 23.) The Court addresses each in turn.

With respect to the first argument, the Court concludes that Hines has sufficiently alleged the protectability of the guitar riff.  Copyright law protects a song's "notes [and] rhythm," *see Rose*, 2018 WL 626350, at *3, and it is precisely these elements of the riff that Hines alleges Defendants copied:  In a report attached to the complaint and incorporated by reference, musicologist Joe Bennett states that "Paper Chase" and "Toe 2 Toe" contain identical or near-identical "pitches" and "rhythmic values" as the opening bars of Hines' single. (*See* Dkt. No. 38-1 at 5-6.) Defendants nevertheless argue that the guitar riff is not protectable because it is not original:  Citing the Bennett report, Defendants point out that Hines copied the riff from "a widely used public domain melody titled 'Mysterioso Pizzicato,'" which first appeared in 1914 and was common in silent films.  (Dkt. No. 65 at 21; Dkt. No. 38-1 at 4.)  To be sure, originality is the "*sine qua non* of copyright." *Feist*, 499 U.S. at 345.  But originality does not require a large amount of creativity — "even a slight amount will suffice." *Id*.  "The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble[,] or obvious it might be." *Id.* (internal quotation marks and citation omitted).  Hines' guitar riff clears this bar.  Although the riff appears to take its basic structure and melody from "Mysterioso Pizzicato," it "uses some different pitches and rhythmic values," which gives it enough of a creative spark, however small, to qualify as original. (Dkt. No. 38-1 at 4.)  The Court therefore declines to dismiss the complaint on the basis of Defendants' first argument.

The second argument is likewise unavailing.  Defendants claim that Hines fails to allege "how or where" the "Help Me" guitar riff was allegedly incorporated into their songs. (Dkt. No. 65 at 20.)  To the contrary, however, the Bennett report states that parts of the "Help Me" riff —

including a five-note section from the middle of the riff and the final G-minor chord — repeat throughout "Paper Chase" and "Toe 2 Toe." (*See* Dkt. No. 38-1 at 4, 8.) Specifically, Bennett finds that approximately 84 percent of "Paper Chase" contains audio samples of the "Help Me" riff, and that part of the riff "makes up the guitar audio loop" that cycles through "Toe 2 Toe." (Dkt. No. 38-1 at 8.) These facts are "enough to support an inference" that Defendants copied Hines' work, *Fisher-Price*, 25 F.3d at 123, especially given Bennett's opinion that Defendants sampled audio from — and therefore had access to — the "Help Me" recording (Dkt. No. 38-1 at 9). Whether such copying rises to the level of substantial similarity is, of course, another matter. But the Court will not foreclose that possibility at this juncture. Although a district court may resolve the question of substantial similarity "as a matter of law on a Rule 12(b)(6) motion to dismiss," the Court declines to do so here, where the technical nature of the allegations make it difficult to address the issue "without the aid of discovery or expert testimony." *Gaito*, 602 F.3d at 65. Accordingly, dismissal on the basis of Defendants' second argument is improper.

    Finally, Defendants argue that the alleged copying does not qualify as infringement because the three-measure guitar riff comprises an insubstantial portion of "Help Me." (Dkt. No. 65 at 22-23.) This argument implicates the doctrine of "fragmented literal similarity," which applies where, as here, the alleged copying concerns "a fragment of a copyrighted work" rather than the work as a whole. *Rose*, 2018 WL 626350, at *4. In such cases, "the question of substantial similarity is determined by an analysis of whether the copying goes to trivial or substantial elements of the *original work*." *Id.* (internal citation omitted). This test has a qualitative element as well as a quantitative one: The Court considers both whether the defendant copied "important features of the plaintiff's protected expression" and "how much of the plaintiff's protected expression has been copied." *Id.* As with the issue of substantial

similarity broadly, a court may resolve such questions on a 12(b)(6) motion to dismiss. *See id.* at *5-6 (granting motion to dismiss where the fragment in question amounted to only six percent of the entire recording and did not appear to be significant to the work as a whole). In this case, however, discovery is necessary to shed light on the qualitative significance of the guitar riff to the rest of the song, so the Court cannot resolve "whether the copying goes to trivial or substantial elements of the original work" at this stage as a matter of law. *Id.* at *4 (internal citation and emphasis omitted); *see also id.* (noting that a fragment's qualitative significance can outweigh its length for the purpose of establishing infringement). The Court therefore declines to dismiss the complaint on the basis of this argument.

**IV.   Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is DENIED.[3] Defendants are directed to answer the complaint by June 29, 2021.

The Clerk of Court is directed to close the motion at Docket Numbers 64 and 67.

SO ORDERED.

Dated: June 8, 2021
       New York, New York

_____
                     J. PAUL OETKEN
                     United States District Judge

---

[3] In the alternative, Defendants ask the Court to require Hines to post a bond as security for costs. (*See* Dkt. No. 65 at 23-30.) Under Local Rule 54.2, "[t]he court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." It is widely recognized that courts "have broad discretion in deciding whether a party should be required to post such a bond." *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, No. 06-CV-3085, 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008). Having considered the arguments of the parties, the Court has determined that requiring a bond is not warranted here. Accordingly, the Court declines to impose a bond.