## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ERNIE HINES D/B/A COLORFUL MUSIC,

           Plaintiff,

   v.

BMG RIGHTS MANAGEMENT (US) LLC,
W CHAPPELL MUSIC CORP., SHAWN
CARTER p/k/a JAY-Z, TIMOTHY MOSLEY
p/k/a TIMBALAND, and ELGIN BAYLOR
LUMPKIN p/k/a GINUWINE,

           Defendants.

CASE NO. 1:20-CV-03535-JPO

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
## FOR SUMMARY JUDGMENT OF DEFENDANTS
## W CHAPPELL MUSIC CORP., SHAWN CARTER, AND TIMOTHY MOSLEY

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    UNDISPUTED FACTS ........................................................................................... 4

    A.     Ernie Hines And The Composition "Help Me" ........................................... 4

    B.     The Allegedly Infringing Works.................................................................. 6

        1.     "Paper Chase" ................................................................................. 6

        2.     "Toe 2 Toe"...................................................................................... 7

    C.     Any Similarities Between The Works At Issue Are Commonplace...................... 7

III.   PROCEDURAL HISTORY..................................................................................... 10

    A.     Plaintiff's First Action—Rife With Deficient Pleadings—Is Dismissed ............ 10

    B.     Plaintiff Abandons *Hines I* And Files The Instant Lawsuit Despite The Lack
        Of Any Good Faith Basis For His Claims ............................................................11

    C.     The Parties Serve Expert Reports; Plaintiff's Expert Fails To Dispute The
        Dispositive Conclusions Of Defendants' Expert ................................................. 12

IV.    ARGUMENT ......................................................................................................... 13

    A.     Standard Of Review .................................................................................... 13

        1.     Summary Judgment Standard ..................................................... 13

        2.     Elements Of A Copyright Infringement Claim............................. 15

    B.     This Action Must Be Dismissed Because Plaintiff Cannot Establish
        Copyright Infringement As A Matter Of Law ...................................................... 18

        1.     The Introduction Is Unprotectable ............................................... 18

        *2.*     Plaintiff Cannot Establish Substantial Similarity And Actionable
            Copying Under Any Standard, Including Under The Fragmented
            Literal Similarity Test................................................................... 19

    C.     In The Alternative, The Court Should Grant Partial Summary Judgment
        Establishing A Cap On Plaintiff's Potential Damages ......................................... 22

        1.     Hines Has No Copyright Registration For The Allegedly Infringed
            Introduction That Predates The Alleged Infringements; Thus, Even If
            This Action Survives, Plaintiff Is Not Entitled To Statutory Damages
            Or Attorneys' Fees....................................................................... 22

**TABLE OF CONTENTS**
(continued)

**Page**

     2.     Any Actual Damages Must Be Capped So They Do Not Exceed The Undisputed $4,705.63 In Gross Revenues Earned Within The Statute Of Limitations Period ................................................................................ 24

V.     CONCLUSION ................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Acuff–Rose Music, Inc. v. Jostens, Inc.*,
   155 F.3d 140 (2d Cir. 1998)........................................................................................16, 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................................................13

*Bryant v. Maffucci*,
   923 F.2d 979 (2d Cir. 1991)....................................................................................................13

*Dressler v. MV Sandpiper*,
   331 F.2d 130 (2d Cir. 1964)....................................................................................................13

*Est. of Smith v. Cash Money Recs., Inc.*,
   253 F. Supp. 3d 737 (S.D.N.Y. 2017), *aff'd sub nom. Est. of Smith v. Graham*,
   799 F. App'x 36 (2d Cir. 2020) ..............................................................................................11

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co. Inc.*,
   499 U.S. 340 (1991).................................................................................................................15

*Gaste v. Kaiserman*,
   863 F.2d 1061 (2d Cir. 1988)............................................................................................16, 17

*Gray v. Perry*,
   No. 215CV05642CASJCX, 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020).................3, 16, 18

*Hayden v. Koons*,
   No. 21 CIV. 10249 (LGS), 2022 WL 2819364 (S.D.N.Y. July 18, 2022) ............................24

*Hernandez v. Off. of Comm'r of Baseball*,
   No. 18-CV-9035 (JPO), 2021 WL 1226499 (S.D.N.Y. Mar. 31, 2021)................................14

*Hines v. Roc-A-Fella Records, Inc.*,
   No. 19-CV-04587-JPO, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) ..........................10, 11

*In re Cellco P'ship*,
   663 F. Supp. 2d 363 (S.D.N.Y. 2009).......................................................................................5

*Intersong-USA v. CBS, Inc.*,
   757 F. Supp. 274 (S.D.N.Y. 1991)....................................................................................16, 19

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Johnson v. Gordon*,
    409 F.3d 12 (1st Cir. 2005) ................................................................................ 14

*LEGO A/S v. Best-Lock Constr. Toys, Inc*.,
    404 F. Supp. 3d 583 (D. Conn. 2019) ................................................................ 17

*Levin v. Gallery 63 Antiques Corp*.,
    No. 04 CV 1504 KMK, 2006 WL 2802008 (S.D.N.Y. Sept. 28, 2006) ............... 14

*May v. Sony Music Ent.*,
    399 F. Supp. 3d 169 (S.D.N.Y. 2019) ................................................................ 22

*McDonald v. Multimedia Entm't, Inc.*,
    No. 90 Civ. 6356(KC), 1991 WL 311921 (S.D.N.Y. July 19, 1991) ................... 16

*McDonald v. Wes*t,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015) ........................................................... 17, 19

*Newton v. Diamond*,
    204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003);
    *opinion amended and superceded on denial of reh'g*, 388 F.3d 1189 (9th Cir.
    2004) and *aff'd*, 388 F.3d 1189 (9th Cir. 2004) ..................................... 2, 5, 16, 21

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,
    367 F. Supp. 2d 514 (S.D.N.Y. 2005) ................................................................ 23

*Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) ............................................................................ 15, 16

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ........................................................................................... 24

*Poindexter v. EMI Rec. Grp. Inc.*,
    No. 11 CIV. 559 LTS JLC, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ..... 16, 19

*Realtime Data, LLC v. Morgan Stanley*,
    No. 11 Civ. 6696 KBF, 2012 WL 5465025 (S.D.N.Y. Nov. 9, 2012) ................. 14

*Repp & K & R Music, Inc. v. Webber*,
    132 F.3d 882 (2d Cir. 1997) ............................................................................... 14

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

*Rivera v. Home Depot USA, Inc.*,
   776 F. App'x 4 (2d Cir. 2019) ...................................................................................14

*Robbins v. Moore Medical Corp.*,
   894 F. Supp. 661 (S.D.N.Y. 1995).............................................................................15

*Rose v. Hewson*,
   No. 17-CV-1471, 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ......................................*passim*

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ...................................................................................15

*Skidmore v. Zeppelin*,
   952 F. 3d 1051 (9th Cir. 2021) ................................................................................24

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020)..................................................................................4, 24

*Stewart v. Abend*,
   495 U.S. 207 (1990)................................................................................................15

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ...................................................................................16

*Tisi v. Patrick*,
   97 F.Supp.2d 539 (S.D.N.Y. 2000)...........................................................................14

*TufAmerica, Inc. v. Diamond*,
   968 F. Supp. 2d 588 (S.D.N.Y. 2013).................................................................17, 19

*TufAmerica, Inc. v. WB Music Corp.*,
   67 F. Supp. 3d 590 (S.D.N.Y. 2014).............................................................19, 21, 22

*Velez v. Sony Discos*,
   No. 05 CIV. 0615 (PKC), 2007 WL 120686 (S.D.N.Y. Jan. 16, 2007) ..................14, 16, 19

*Yague v. Visionaire Publ'g LLC*,
   No. 19-CV-11717 (LJL), 2021 WL 4481178 (S.D.N.Y. Sept. 29, 2021) ...........................23

**TABLE OF AUTHORITIES**
<u>(continued)</u>

**<u>Page(s)</u>**

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014).................................................................................................15, 17

**RULES & STATUTES**

17 U.S.C. § 412.........................................................................................................................22, 23

17 U.S.C. § 504.............................................................................................................................24

17 U.S.C. § 507.............................................................................................................................24

Fed. R. Civ. P. 12(b)(6).................................................................................................................19

Fed. R. Civ. P. 56...........................................................................................................................1

Defendants W Chappell Music Corp. d/b/a WC Music Corp. f/k/a WB Music Corp. ("Warner"), Shawn Carter p/k/a Jay-Z ("Carter"), and Timothy Mosley p/k/a Timbaland ("Mosley") ("Defendants") submit this Memorandum in support of their Motion, pursuant to Fed. R. Civ. P. 56, for dismissal of the entirety of this action.[1]

## I.      PRELIMINARY STATEMENT

This case highlights why it is critically important for courts to exercise a gatekeeping function at the summary judgment phase to prevent further unnecessary and baseless litigation. Now, expert discovery confirms as a matter of undisputed fact—precisely what Defendants previously submitted—that Plaintiff's alleged copyright infringement claims wholly fail as a matter of law on liability.  Plaintiff's allegedly infringed musical phrase is merely a copy of a public domain source, to which Plaintiff added not a scintilla of copyrightable expression that could sustain his claims.  Alternatively, Plaintiff's alleged damages must be limited as a matter of law, based on the undisputed fact that the gross revenue of Defendants for the allegedly infringing works totals no more than $4,705.63 for the relevant time period.

The sole plaintiff, Ernie Hines ("Plaintiff" or "Hines"), claims to co-own the copyright in the musical composition (not the sound recording) of the 1969 song "Help Me Put Out The Flame (In My Heart)" (hereinafter, "Help Me").[2]  Plaintiff alleges that a five-second introduction

---

[1] The remaining causes of action against Defendants in Plaintiff's operative Third Amended Complaint all assert claims for purported copyright infringement and are as follows: Count II (against Warner in connection with the composition "Paper Chase"); Count III (against Carter in connection with the composition "Paper Chase"); Count IV (against Mosley in connection with the composition "Paper Chase"); and Count V (against Mosley in connection with the composition "Toe 2 Toe").

[2] Plaintiff's assertion that the sound recording of the "Help Me" Introduction (hereinafter defined)—which he does not own and on which he thus lacks standing to sue—was allegedly copied is not relevant to the analysis of whether the underlying compositional elements of the

in "Help Me" (the "Introduction")—which Plaintiff concedes was taken from the well-known

public domain "Mysterioso Pizzicato"—was infringed by two musical compositions: "Paper

Chase" and "Toe 2 Toe."  Defendants are certain high-profile writers and/or performers of

"Paper Chase" and "Toe 2 Toe," and an administrator of certain rights to "Paper Chase" and

"Toe 2 Toe."

As the undisputed facts on this Motion establish, Plaintiff's claim is limited to the five-

second Introduction; there is no claim that "Paper Chase" or "Toe 2 Toe" have any other musical

similarities or any lyrical similarities whatsoever to "Help Me."  Plaintiff's expert Dr. Joe

Bennett admitted in his sole report from 2019 that the Introduction of "Help Me" was sourced

from public domain material.  While Dr. Bennett claimed in his 2019 report that Plaintiff added

material beyond the public domain source material he took from "Mysterioso Pizzicato" in the

Introduction, he failed to identify any such specific material.  Dr. Bennett's conclusory assertion

now stands wholly rebutted, as a matter of undisputed fact, by the analysis of Defendants' expert

Dr. Lawrence Ferrara that forms the basis of this motion.[3]

Specifically, Dr. Ferrara establishes as a matter of unrebutted and undisputed fact that

Plaintiff added **no** separate protectable expression in the Introduction that could support any

---

Introduction could form the basis of a copyright claim.  *Newton v. Diamond*, 204 F. Supp. 2d
1244, 1248-49 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003), *opinion amended and
superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004), and *aff'd*, 388 F.3d 1189 (9th Cir.
2004).  The two copyrights are separately analyzed, as are claims with respect thereto.  For that
reason, and solely for purposes of expert discovery and this motion, Defendants do not dispute
that "Paper Chase" and "Toe 2 Toe" copied the "Help Me" sound recording.  As established
herein, Hines has no protectable copyright interest in the compositional elements of the
Introduction.

[3] Dr. Ferrara's Report, dated September 29, 2022, stands fully unrebutted and is the last word on
the subject in the expert discovery phase.

claim in this case.  First, Dr. Ferrara identifies at least twenty-eight songs that predate the release

of "Help Me" that also use the stock device of "Mysterioso Pizzicato" (collectively, the "MP

Prior Art"), establishing its common usage.  Second, Dr. Ferrara's further **undisputed** findings

and opinions establish that the **only** musical variance the Introduction has from the MP Prior Art

is wholly insignificant: (1) adding ***one "C" note that does not even appear in "Paper Chase" or***

***"Toe 2 Toe"***; and (2) ***playing of one single note—that is in the MP Prior Art—on a slightly***

***different syncopated rhythm (i.e., played off the beat)***.  Third, Dr. Ferrara establishes that the

first difference from the MP Prior Art—a single C note—is irrelevant because it is not in "Paper

Chase" or "Toe to Toe," and is merely a completely insignificant one-note variance from the

public domain source.  Fourth, the second difference from the MP Prior Art also is wholly

irrelevant, because simply syncopating the rhythm of one existing note is utterly insufficient to

create "protectable expression."  *See*, *e.g.*, *Rose v. Hewson*, No. 17-CV-1471, 2018 WL 626350,

at *3 (S.D.N.Y. Jan. 30, 2018) ("Generally, individual notes and common rhythms are not

protectable"); *Gray v. Perry*, No. 215CV05642CASJCX, 2020 WL 1275221, at *7 (C.D. Cal.

Mar. 16, 2020) ("***'syncopation' not protectable***" (quoting *Morril v. Stefani*, 338 F.Supp.3d 1051,

1060 (C.D. Cal. 2018))).[4]

Viewing these undisputed facts under the "fragmented literal similarity" test enunciated

by this Court in an earlier decision in this action,[5] Hines cannot demonstrate any copying of

---

[4] Unless otherwise noted, all emphasis has been added to quotations, and all citations and
quotation marks have been omitted.

[5] This Court stated that since "the alleged copying concerns 'a fragment of a copyrighted work'
rather than the work as a whole" the doctrine of "fragmented literal similarity" is implicated in
this case.  Dkt. No. 78 (the "Decision"), at 6 (quoting *Rose*, 2018 WL 626350, at *4).

***protectable elements*** (*i.e.*, not commonplace elements or public domain materials) that are both

***quantitatively*** and ***qualitatively*** sufficient to support a finding of substantial similarity.

As Dr. Ferrara's undisputed findings establish, the Introduction is not quantitatively important to

"Help Me" as it appears only once briefly, comprises less than 3% of the entire song, never

repeats, and has no connection to any other portion of "Help Me."[6]  Dr. Ferrara's unrebutted

opinions also establish the lack of qualitative significance of the Introduction to "Help Me" as

merely a regurgitation of public domain elements.  Under governing law, the Introduction thus

can never be found to be qualitatively significant in a substantial similarity analysis because it

contains absolutely no protectable expression created by Plaintiff.

Summary judgment should be granted in favor of Defendants, and this action dismissed.[7]

## II.     UNDISPUTED FACTS

### A.     <u>Ernie Hines And The Composition "Help Me"</u>

Plaintiff is a co-author and co-owner of the copyright in a musical composition entitled

"Help Me Put Out The Flame (In My Heart)" (as defined *supra*, Help Me).  Statement of

Undisputed Facts ("SUF") ¶ 1.[8]  "Help Me" is a blues-based soul song with sung vocals.  SUF

---

[6] The Introduction was not even contained on the deposit copy filed with the U.S. Copyright Office for registration of the "Help Me" composition in 1969.

[7] Plaintiff's entire lawsuit should be dismissed as a matter of summary judgment.  However, if the Court declines to grant that relief, then partial summary judgment should be granted regarding the limited scope of Plaintiff's potential damages.  Specifically, the Court should hold that: (1) Plaintiff is not entitled to statutory damages or attorneys' fees under any circumstance; and (2) under *Sohm v. Scholastic Inc*., 959 F.3d 39 (2d Cir. 2020), Plaintiff could, at best, only be entitled to a portion of Defendants' receipts for the period commencing three years prior to Plaintiff's filing of this lawsuit through the present date, receipts which total $4,705.63.

[8] The preceding sentence, and certain other matters set forth in this memorandum, are undisputed by Defendants solely for purposes of this summary judgment motion.

¶ 2.  The other alleged co-writer and copyright co-owner of the "Help Me" composition is Luvall

Wesby, who is not a party to this action.  A sound recording of "Help Me," performed by

Plaintiff, was released on vinyl in 1970, and was re-released on compact disc ("CD") in 1993.

***Plaintiff has no ownership rights in the sound recording copyright of "Help Me."***  SUF ¶¶ 3,

4.[9]  (For purposes of clarity, the musical composition at issue is hereinafter referred to as "Help

Me," while the sound recording thereof, in which Plaintiff holds no rights, is referred to as the

"Help Me Recording.")

"Help Me" opens with a three-bar guitar riff (as defined *supra*, the Introduction).  SUF

¶ 5.  This fleeting Introduction (which only lasts about five seconds when performed) does not

repeat in any other part of "Help Me."  SUF ¶ 8.

As Plaintiff's expert conceded in 2019, the Introduction utilizes "the famous *Mysterioso*

*Pizzicato* (aka the 'movie villain's theme') ... [that] appeared first in 1914 and was common in

silent film in the early 20th century (and is presumably non-copyright)."  SUF ¶¶ 12, 13.

On December 23, 1969, the U.S. Copyright Office issued a copyright registration for

"Help Me," No. EU154302 (the "1969 Registration").  SUF ¶ 15.  The lead sheet deposit copy of

"Help Me" submitted to the U.S. Copyright Office in 1969 in connection with the application for

the 1969 Registration (the "Help Me Deposit Copy") did not include the Introduction.  SUF ¶ 16.

The 1969 Registration (and a 1997 renewal thereof) is the only copyright registration that was

---

[9] "Sound recordings and their underlying musical compositions are separate works with their
own distinct copyrights."  *In re Cellco P'ship*, 663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009).  "A
musical composition consists of rhythm, harmony, and melody," can be notated in sheet music,
and can be performed by any musical performer with sufficient skill.  *Rose*, 2018 WL 626350, at
*2; *Newton*, 204 F. Supp. 2d at 1248-49.  A sound recording captures "the sound produced by …
[a particular] performer's rendition of" a musical composition.  *Newton*, 204 F. Supp. 2d at
1249-50.

applied for, or issued, for "Help Me" prior to the release of the allegedly infringing works at issue in his lawsuit.  SUF ¶ 17.

**B.    The Allegedly Infringing Works**

Plaintiff's operative pleading in this action, the Third Amended Complaint (the "TAC"; Dkt. No. 149), asserts causes of action against Defendants for purported copyright infringement of "Help Me," in connection with the release of two sound recordings of musical compositions that are respectively entitled "Paper Chase" and "Toe 2 Toe."[10]

Specifically, the TAC alleges that the sound recordings of "Paper Chase" and "Toe 2 Toe" contain unauthorized "samples" of the Help Me Recording, TAC, Exh. D, which recording Plaintiff admittedly does not own.  Because Plaintiff does not own the Help Me Recording, the TAC further alleges that the portions of the Help Me Recording that are sampled in "Paper Chase" and "Toe 2 Toe" purportedly contain "protectable elements" of the musical composition "Help Me."  *Id.*

**1.    "Paper Chase"**

The recording of the musical composition entitled "Paper Chase" was commercially released in or about 1998.  SUF ¶ 18.  "Paper Chase" is a hip-hop song with rapped vocals.  SUF ¶ 19.  The "Paper Chase" composition was co-written by Mosley and Carter.  SUF ¶ 20.

Mosley is a musician, record producer, songwriter, and music business executive professionally known as Timbaland.  SUF ¶ 21.  Mosley was the producer and author of the music underlying the vocals in "Paper Chase."  SUF ¶ 22.  Carter is a recording artist and

---

[10] The TAC also asserted a cause of action against Defendants for unjust enrichment.  TAC, ¶¶ 72-77.  On August 23, 2022, the Court issued a Decision and Order which dismissed this cause of action on the ground that it is preempted by the U.S. Copyright Act.  Dkt. No. 172.

songwriter, professionally known as Jay-Z.  SUF ¶ 23.  In or around 1997, Carter wrote rap

lyrics for "Paper Chase," and recorded his vocal performance of those lyrics over the beat

Mosley had created for "Paper Chase."  SUF ¶ 24.

In total, from the third quarter of 2017 (three years before this lawsuit was filed) through

the third quarter of 2022, "Paper Chase" earned $4,538.39 in revenue for Defendants.  SUF ¶ 25.

### 2. "Toe 2 Toe"

The sound recording of the musical composition entitled "Toe 2 Toe" was commercially

released in or about 1999.  SUF ¶ 26.  "Toe 2 Toe" is an R&B song with sung vocals.  SUF ¶ 27.

The "Toe 2 Toe" composition was co-written by Mosley and Elgin Baylor Lumpkin

("Lumpkin").  SUF ¶ 28.  Mosley was the producer and author of the music underlying the

vocals in "Toe 2 Toe."  SUF ¶ 29.  Lumpkin is a recording artist and songwriter, professionally

known as Ginuwine.  SUF ¶ 30.  Lumpkin wrote and performed the vocals on "Toe 2 Toe."  SUF

¶ 31.

In total, from the third quarter of 2017 (three years before this lawsuit was filed) through

the third quarter of 2022, "Toe 2 Toe" earned $167.24 in revenue for Defendants.  SUF ¶ 32.

### C. Any Similarities Between The Works At Issue Are Commonplace

As noted above, Plaintiff's allegations of copying relate solely to the fleeting Introduction

to the composition "Help Me."  Aside from their purported use of the material from the

Introduction, "Paper Chase" and "Toe 2 Toe" have no significant musical similarities to "Help

Me."  SUF ¶ 37.  Nor do "Paper Chase" or "Toe 2 Toe" have any lyrical similarities to "Help

Me."  SUF ¶¶ 51, 52.

Plaintiff's claim of musical similarities between the Introduction in "Help Me," on the

one hand, and "Paper Chase" and "Toe 2 Toe," on the other hand, is premised entirely upon the

7

opinions of his expert Dr. Joe Bennett.  However, as Dr. Bennett himself admits, the compositional material in the Introduction of "Help Me" was sourced from a public domain melody; specifically, "Mysterioso Pizzicato," which is also known as "The Movie Villain's Theme."  SUF ¶ 12.  In Dr. Bennett's own words, "Mysterioso Pizzicato" is "a melody that appeared first in 1914 and was common in silent film in the early 20th century (***and is presumably non-copyright***)."  SUF ¶ 13.

Critically, Dr. Bennett failed to specify any original musical expression whatsoever that is purportedly contained in the Introduction of "Help Me."  Nor could Dr. Bennett have done so, given that his report failed to transcribe "Mysterioso Pizzicato" or to analyze any other prior art, *i.e.*, other songs released prior to "Help Me" and that also quoted from "Mysterioso Pizzicato." Instead, Dr. Bennett merely stated, in vague and conclusory fashion, that the Introduction of "Help Me" purportedly "uses some different pitches and rhythmic values from M[ysterioso] P[izzicato], and should therefore be considered an original melody composed by Hines."  Dr. Bennett did not specify what those purportedly "different pitches" are, nor did he identify the "rhythmic values" that he claimed are "different" from "Mysterioso Pizzicato."

Dr. Ferrara, on the other hand, conducted a thorough, analytical dissection of "Mysterioso Pizzicato," "Help Me,"[11] "Paper Chase,"[12] and "Toe 2 Toe,"[13] including by transcribing the works into musical notation, reviewing and transcribing relevant prior art, and extracting those elements

---

[11] The Help Me Recording is available at:
https://www.youtube.com/watch?v=3QbrNzmEi1w.

[12] The commercially released recording of "Paper Chase" is available at:
https://www.youtube.com/watch?v=E02zjN81gSk.

[13] The commercially released recording of "Toe 2 Toe" is available at:
https://www.youtube.com/watch?v=PRIROIcJRIA.

of the Introduction that are unprotectable.  SUF ¶ 36.  Dr. Ferrara analyzed at least twenty-eight

prior art songs that he concluded also use the stock device of "Mysterioso Pizzicato" (as defined

*supra*, the "MP Prior Art").  SUF ¶¶ 14, 38-49.  The MP Prior Art includes, but is not limited to,

the songs "Mysterious Mose" (1926), "The Skeleton in the Closet" (1936), "Old Man Mose"

(1939), "Peek-A-Boo" (1958), "Not of This Earth" (1959), "The Headless Horseman" (1963),

"Strychnine" (1965), and "Spider Walk" (1965).  SUF ¶¶ 38-49.  Dr. Ferrara further concluded

that there are many important differences between "Help Me" on the one hand, and "Paper

Chase"/ "Toe 2 Toe" on the other hand.  SUF ¶¶ 51-64.

Based upon this thorough analysis, Dr. Ferrara concluded that the only musical material

that is contained in the Introduction of "Help Me," and which is not found in the MP Prior Art,

is: (1) one additional "C" note ***that does not appear in "Paper Chase" or "Toe 2 Toe"***; and (2) a

single note that is syncopated (*i.e.*, played off the beat).  SUF ¶ 49.  Thus, Dr. Ferrara concluded,

"[t]he thin and fragmentary similarities in ['Paper Chase'] and ['Toe 2 Toe'] as compared with

['Help Me'] do not copy any significant expression from ['Help Me'] but rather use the same

public domain material that Plaintiff copied from 'Mysterioso Pizzicato.'"  SUF ¶ 50.

Dr. Ferrara further concluded that the five-second Introduction is a minimal part of "Help

Me," in addition to being a stock device interpolation of "Mysterioso Pizzicato."  SUF ¶ 65.  The

Introduction is not part of the body of the "Help Me" composition; rather the body of "Help Me"

starts with the vocal pickup at 0:05 after the Introduction.  SUF ¶ 66.  Unlike in the rest of "Help

Me," there are no vocals in the Introduction.  SUF ¶¶ 2, 6.  When the Introduction of "Help Me"

is performed, it constitutes a mere five seconds in duration out of a total of 192 seconds which it

takes to perform the entirety of "Help Me."  SUF ¶ 7.  In other words, the Introduction

9

constitutes less than three percent of "Help Me."  SUF ¶ 7.  The Introduction does not repeat in any other part of "Help Me," and the melody in the Introduction has no connection to any other melodies found elsewhere in "Help Me."  SUF ¶¶ 8, 9.  For these reasons, "a cover version of ['Help Me'] that omits this brief Intro[duction] would still be a 'cover' of the 'whole song.'"  SUF ¶ 67.

### III.   PROCEDURAL HISTORY

#### A.   Plaintiff's First Action—Rife With Deficient Pleadings—Is Dismissed

On May 18, 2019, Plaintiff filed *Hines v. Roc-A-Fella Records, Inc.*, No. 19-CV-04587-JPO ("*Hines I*"), which concerned the exact same works and claims of purported copyright infringement, against Carter and Mosley, as well as against certain record labels (collectively, the "*Hines I* Defendants").  SUF ¶ 71.

When he filed *Hines I*, however, Plaintiff failed to identify in his pleading what music in "Help Me" was allegedly infringed.  On April 16, 2020, after multiple amendments to his complaint (which were also deficient pleadings), the *Hines I* case was dismissed (with conditional leave to amend) due to Plaintiff's failure to properly allege what protectable aspects of "Help Me" were infringed and his failure to allege substantial similarity.  *Hines I*, Dkt. No. 94. The Court conditioned leave to amend upon Plaintiff's payment of the costs and attorneys' fees incurred by certain *Hines I* Defendants due to Plaintiff's causation of needless motion practice and violation of the Court's Individual Practices.  *Id.* at 9 n.12.  The Court also dismissed Mosley and Carter on the basis that Plaintiff had not timely served them, and further held that Plaintiff was not entitled to an enlargement of time to attempt to serve them.  *Id.* at 6-7.

**B.    Plaintiff Abandons *Hines I* And Files The Instant Lawsuit Despite The Lack Of Any Good Faith Basis For His Claims**

Plaintiff failed to pay the approximately $120,000 owed to the *Hines I* Defendants and instead moved for reconsideration of the Order dismissing *Hines I*. *Hines I*, Dkt. Nos. 97-98. While the reconsideration motion was pending, Plaintiff filed the instant lawsuit on May 6, 2020 ("*Hines II*").[14] *Hines II*, Dkt. No. 1. Plaintiff thereafter withdrew his motion for reconsideration and declared that he no longer wished to prosecute *Hines I* after being advised by the Court that he could not proceed further against Mosley and Carter in *Hines I*. *Hines I*, Dkt. Nos. 100, 103.

On June 23, 2020, Defendants' counsel sent Plaintiff's then-counsel Christopher Brown a letter urging Plaintiff to voluntarily withdraw his claims, and informing him that "Paper Chase" and "Toe 2 Toe" had earned only a few thousand dollars in the last three years, such that Plaintiff's putative recovery was *de minimis* under recent, binding Second Circuit case law. *See Hines II*, Dkt. No. 47-3. Less than a week later, Mr. Brown withdrew as counsel, citing a "breakdown in the relationship between counsel and Hines' advisory team." *Hines II*, Dkt. No. 43. Plaintiff's current counsel, Andrew Williams, later appeared in the matter on behalf of Plaintiff.[15] *Hines II*, Dkt. No. 59.

---

[14] The only difference between *Hines I* and *Hines II* is that Plaintiff did not name as parties the *Hines I* record label defendants and instead named certain music publishers who control certain musical composition rights in "Paper Chase" and "Toe 2 Toe."

[15] Mr. Williams has appeared *pro hac vice*, as he is licensed to practice in Florida, where Plaintiff's manager and agent Stephen Hacker resides. Mr. Hacker, a serial copyright-infringement claimant, controls this lawsuit through his company Hebrew Hustle, Inc. ("Hebrew Hustle") pursuant to the terms of a so-called "Consulting Agreement." Under the Consulting Agreement, Plaintiff agreed to pay Hebrew Hustle fifty percent (50%) of the monetary proceeds from any recovery, and granted it the "exclusive right to settle" the alleged infringement claims on Plaintiff's behalf. Notably, Hebrew Hustle and Mr. Hacker previously purchased rights in an alleged musical composition, and asserted similarly meritless copyright infringement claims against defendants (including Warner Chappell Music, Inc. f/k/a Warner/Chappell Music, Inc.),

**C.    The Parties Serve Expert Reports; Plaintiff's Expert Fails To Dispute The Dispositive Conclusions Of Defendants' Expert**

In the *Hines II* initial complaint, Plaintiff included an expert report from Dr. Joe Bennett, which, among other things, conceded that the Introduction of "Help Me" was copied from public domain material; namely, "Mysterioso Pizzicato." SUF ¶¶ 10, 12, 13. This is the only expert report that Plaintiff has served in this action, and it is the sole expert report upon which Plaintiff relies (and can rely). SUF ¶ 11.

In his 2019 report, Dr. Bennett focused his analysis on whether the sound recordings of "Paper Chase" and "Toe 2 Toe" contain samples of the Help Me Recording. As discussed herein, that analysis is irrelevant because Plaintiff does not own the Help Me Recording, and, solely for purposes of this motion, Defendants do not dispute that "Paper Chase" and "Toe 2 Toe" copied the Introduction to "Help Me." Also deficiently, Dr. Bennett failed to transcribe the MP Prior Art, to extract the unprotectable elements of the MP Prior Art that were copied in the Introduction, or to identify what exactly was allegedly copied from the Introduction that is actually protectable. He failed to demonstrate any quantitative or qualitative importance of the compositional elements of the Introduction of "Help Me."

In his 2022 Report, Dr. Ferrara, on the other hand, conducted an analytical dissection of all the relevant musical compositions; namely, "Mysterioso Pizzicato," many other prior songs using MP Prior Art, the Introduction, "Paper Chase," and "Toe 2 Toe," including by transcribing the works into musical notation, reviewing and transcribing relevant prior art, and extracting

---

in an action entitled *Est. of Smith v. Cash Money Recs., Inc*. Hebrew Hustle's claim in that action was dismissed with prejudice at the summary judgment stage. *See* 253 F. Supp. 3d 737 (S.D.N.Y. 2017), *aff'd sub nom. Est. of Smith v. Graham*, 799 F. App'x 36 (2d Cir. 2020). The same result is warranted here.

those elements of the works at issue that are unprotectable.  Dr. Ferrara concluded that the only

additional material that Plaintiff added in the Introduction that is not in the MP Prior Art is one

additional "C" note, which additional note is not protectable, and, in any event, does not even

appear in either "Paper Chase" or "Toe 2 Toe," and the shift of the rhythm on one note that is in

the MP Prior Art to syncopation.  SUF ¶ 49.[16]  Dr. Ferrara provided detailed findings and

opinions that establish the Introduction is not quantitatively or qualitatively important to "Help

Me," and is comprised of unprotectable expression.  Expert discovery closed on October 21,

2022 under the Scheduling Order.  Dkt. No. 152 (adopting schedule set forth at Dkt. No. 148).

## IV.    ARGUMENT

### A.    <u>Standard Of Review</u>

#### 1.    **Summary Judgment Standard**

Summary judgment is appropriate where, drawing all reasonable inferences in favor of

the nonmoving party, the evidence demonstrates that "there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986).  "Once the movant has established a prima facie case

demonstrating the absence of a genuine issue of material fact, the nonmoving party must come

forward with enough evidence to support a jury verdict in its favor[.]"  *Bryant v. Maffucci*, 923

F.2d 979, 982 (2d Cir. 1991).  The nonmovant cannot defeat the motion simply by presenting a

"metaphysical doubt" regarding the facts or "conjecture or surmise" (*id.*), or "conclusory

---

[16]  Dr. Ferrara also established—and it is undisputed—that ***not*** all of the notes which are
contained in the Introduction of "Help Me" are contained in "Paper Chase" or "Toe 2 Toe."  SUF
¶¶ 53, 54.  Moreover, numerous of the notes which are shared by both "Help Me," on the one
hand, and "Paper Chase"/"Toe 2 Toe," on the other hand, appear in a different order in the
former than in the latter.  SUF ¶¶ 55, 56.

allegations." *Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964).

Here, the undisputed factual record, in conjunction with the **undisputed** opinions of

Defendants' expert musicologist Dr. Ferrara, mandate the entry of summary judgment in

Defendants' favor.  The Second Circuit has explained:

> … [W]hen a party opposing summary judgment fails to present evidence
> sufficient to make an issue of an expert's conclusion—such as contrary opinion
> evidence or evidence tending to undermine the expert's credibility or
> qualifications—and when the trier of fact would not be at liberty to disregard
> arbitrarily the unequivocal, uncontradicted, and unimpeached testimony of an
> expert testimony, expert testimony may form the basis of summary judgment.

*Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 7-8 (2d Cir. 2019).

The *Rivera* standard unquestionably applies here.  As discussed below, Plaintiff has **zero**

opinion evidence that contradicts Dr. Ferrara's dispositive opinions.  Nor is there a shred of

evidence to undermine Dr. Ferrara's eminent qualifications[17] or his credibility.  (Pointedly,

Plaintiff elected **not** to depose Dr. Ferrara.)  Summary judgment thus should be granted.  *See,*

*e.g.*, *Hernandez v. Off. of Comm'r of Baseball*, No. 18-CV-9035 (JPO), 2021 WL 1226499, at

*11 (S.D.N.Y. Mar. 31, 2021) (Oetken, J.) (granting summary judgment in favor of defendants

where plaintiff had "done little to rebut" the opinion of defendants' expert); *Realtime Data, LLC*

---

[17] Dr. Ferrara "has been a professor of music at New York University in various capacities since 1979, has taught at both the undergraduate and graduate levels, and has been the Chair of the Department of Music and Performing Arts since 1995. … Dr. Ferrara has authored several books and articles on music and music theory, and presented articles, delivered addresses, and been a panelist member at many conferences in his field. … Dr. Ferrara has been credited and relied upon as an expert on several occasions in this Circuit and others. *E.g. Repp & K & R Music, Inc. v. Webber*, 132 F.3d 882, 886 (2d Cir. 1997); *Johnson v. Gordon*, 409 F.3d 12, 15-16 (1st Cir. 2005); *Tisi v. Patrick*, 97 F.Supp.2d 539, 543-45 (S.D.N.Y. 2000).  Dr. Ferrara is eminently qualified by his knowledge, skill, experience, training, and education to render expert opinions on the musicological similarities and differences between [plaintiff's composition] and [defendants' composition]… ." *Velez v. Sony Discos*, No. 05 CIV. 0615 (PKC), 2007 WL 120686, at *4 (S.D.N.Y. Jan. 16, 2007).

*v. Morgan Stanley*, No. 11 Civ. 6696 KBF, 2012 WL 5465025, at *4 (S.D.N.Y. Nov. 9, 2012)

(holding that "no triable issue" existed as a result of "unrebutted" expert declaration); *Levin v.*

*Gallery 63 Antiques Corp.*, No. 04 CV 1504 KMK, 2006 WL 2802008, at *16 (S.D.N.Y. Sept.

28, 2006) (holding "there is no genuine factual dispute" given, *inter alia*, "Defendants' expert's

uncontradicted opinion"); *Robbins v. Moore Medical Corp.*, 894 F. Supp. 661, 671 (S.D.N.Y.

1995) ("on the basis of undisputed expert testimony … , there is no genuine factual dispute on

this issue, and nothing for a jury to decide.").

### 2.    Elements Of A Copyright Infringement Claim

To establish copyright infringement, a plaintiff has the burden to prove ownership of a

valid copyright[18] as well as that: "(1) the defendant has actually copied the plaintiff's work; and

(2) the copying is illegal because a substantial similarity exists between the defendant's work and

the ***protectable*** elements of plaintiff's."  *Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602

F.3d 57, 63 (2d Cir. 2010); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir.

2014).

In considering these elements, other principles apply.  Copyright owners do not have

exclusive rights over each and every element of their copyrighted works.  *Feist Publ'n, Inc. v.*

*Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 348 (1991).  Rather, "expressions that are standard, stock

or common to a particular subject matter or medium are not protectable under copyright law."

---

[18] For this motion only, Defendants do not dispute Plaintiff co-owns the musical composition of
the "Help Me" copyright.  Also solely for purposes of this motion, Defendants assume, but do
not concede, that the Introduction section of the Help Me Recording was sampled in the sound
recordings of "Paper Chase" and "Toe 2 Toe" and that therefore some compositional elements
from the Introduction are embodied therein.  Assuming same, *arguendo*, Plaintiff still cannot
establish the copying of protectable expression from the compositional elements of the
Introduction and under no circumstances can he meet his burden to prove substantial similarity.

*Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).  When an author creates a work incorporating commonplace "elements [which] are already in the public domain," that author is entitled to "receive protection only for [her or] his original additions to the" new work.  *Stewart v. Abend*, 495 U.S. 207, 234 (1990).  Thus, "***when faced with works that have both protectable and unprotectable elements, [the] analysis must be more discerning . . . we [] must attempt to extract the unprotect[a]ble elements from [] consideration and ask whether the protect[a]ble elements, standing alone, are substantially similar***."  *Peter F. Gaito*, 602 F.3d at 66.

Musical compositions are no exception to this rule.  For example, in *Newton,* the court found that a composer could not establish a copyright claim as to his compositional elements embodied in a sound recording admittedly sampled in the defendants' work because they did not rise to the level of actionable copying.  As explained in *Newton*, "[t]he principle that trivial copying does not constitute actionable infringement has long been a part of copyright law."  388 F.3d at 1193.  Similarly, as this Court has recognized, "[i]n general, **'*individual notes and common rhythms are not protectable[]'*** … [.]"  Decision at 4 (citing *Rose*, 2018 WL 626350, at *3).[19]  Courts therefore must act as gatekeepers to enforce this essential test because there are a

---

[19] *See, e.g.*, *Acuff–Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143-44 (2d Cir. 1998) (common phrase unprotectable); *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) ("a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example)"); *McDonald v. Multimedia Entm't, Inc.*, No. 90 Civ. 6356 (KC), 1991 WL 311921, at *4 n.2 (S.D.N.Y. July 19, 1991) ("it is extremely doubtful that [a] single note and its placement in the composition is copyrightable"); *Newton*, 388 F.3d at 1195 (no substantial similarity where allegedly infringing work sampled a three note sequence and repeated it on loop); *Poindexter v. EMI Rec. Grp. Inc.*, No. 11 CIV. 559 LTS JLC, 2012 WL 1027639, at *4 (S.D.N.Y. Mar. 27, 2012) (single note unprotectable); *Velez*, 2007 WL 120686, at *12 (eight-measure musical phrase in song structure is "widely used structural device"); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (holding that "common elements [that] are found in many other well-known songs ... are unoriginal and constitute 'scenes a faire' or ordinary, unprotect[a]ble expression"); *Gray*, 28 F.4th at 98-99

"limited number of notes and chords available to composers and … common themes frequently reappear in various compositions, especially in popular music." *Gaste*, 863 F.2d at 1068.

Thus, because "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection … not *all* copying is wrongful." *Zalewski*, 754 F.3d at 100 (emphasis in original). Once again, it is only the copying of the ***protected elements*** of a copyrighted work that the law forbids. *Id.* at 101; *see also Rose*, 2018 WL 626350, at *2. Accordingly, the substantial similarity test requires the plaintiff to "show illegality, [which] requires a sharper focus: the court must find a substantial similarity between the ***protect[a]ble elements*** of the two works." *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 608 (D. Conn. 2019) (citing *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119 (2d Cir. 1994)).

The mandate that substantial similarity can only be found with respect to protectable expression is no different under the fragmented literal similarity test.[20] The fragmented literal similarity test "queries whether the copying is: (1) quantitatively; ***and*** (2) qualitatively sufficient

---

("sequence[s] of eight notes" played in an even rhythm is a similarly 'trite' musical choice outside the protection of copyright law" (citing *Darrell v. Joe Morris Music Co.*, 113 F.2d 80, 80 (2d Cir. 1940))). In addition, this principle "excludes from copyright … previous creative works that have fallen into the public domain." *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1068-69 (2d Cir. 1988) (noting that probative similarity "between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to appear in many compositions").

[20] "Even when there is no substantial similarity between two works when they are considered as a whole, liability may exist when a fragment of a copyrighted work has been copied. This doctrine has come to be known as 'fragmented literal similarity.'" *Rose*, 2018 WL 626350, at *4. As this Court held, "the doctrine of fragmented literal similarity … applies where, as here, the alleged copying concerns a fragment of a copyrighted work rather than the work as a whole." Decision at 6 (citing *Rose*, 2018 WL 626350, at *4). "Fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 597 (S.D.N.Y. 2013).

to support a finding of infringement." *Rose*, 2018 WL 626350, at *4.  In determining substantial similarity in the ***quantitative*** sense, a court determines how much of the plaintiff's ***protected*** expression has been copied.  *See id.*  In determining substantial similarity in the ***qualitative*** sense, a court considers whether the defendant copied important features of the plaintiff's ***protected*** expression.  *See id.*  Thus, in all instances no music copyright infringement claim can be established based on copying of ***unprotected*** expression in a composition; such material is available for unfettered use by all music creators.

      **B.**    <u>**This Action Must Be Dismissed Because Plaintiff Cannot Establish**</u>
                <u>**Copyright Infringement As A Matter Of Law**</u>

Applying these legal principles and those discussed herein further below to this action, Plaintiff cannot prove substantial similarity between the Introduction and the compositions "Paper Chase" and "Toe 2 Toe" because the undisputed factual record establishes that the Introduction constitutes ***unprotectable*** expression.

      **1.**    **The Introduction Is Unprotectable**

The undisputed facts establish that the Introduction of "Help Me" is a comprised of nothing more than a stock, public domain phrase from a 1914 work that has been used multiple times since then, including in the MP Prior Art, and is available to all music creators to borrow in building their own works.  That is precisely what Plaintiff did in creating the Introduction.  When that stock unprotectable phrase is removed from the Introduction—as it must be under governing law, there is nothing that remains subject to copyright protection belonging to Plaintiff upon which to build any claim.  All Plaintiff added was: (i) an individual "C" note ***which is not even contained in "Paper Chase" or "Toe 2 Toe" and is therefore irrelevant***; and (ii) a syncopated rhythm, namely the playing of a ***single public domain note*** off the beat, which does not rise to

the level of creating protectable expression.  SUF ¶ 49.  This is utterly insufficient to transform

the Introduction or Plaintiff's add-ons into protectable expression.  *See, e.g.*, *Gray*, 2020 WL

1275221, at *7 ("**'syncopation' not protectable**" (quoting *Stefani*, 338 F.Supp.3d at 1060));

*Acuff–Rose Music, Inc.*, 155 F.3d at 143–44 (common phrase unprotectable); *McDonald*, 138 F.

Supp. 3d at 456 (same); *Poindexter*, 2012 WL 1027639, at *4 (single note unprotectable); *Velez*,

2007 WL 120686, at *12  (eight-measure musical phrase in song structure is "widely used

structural device"); *Intersong-USA.*, 757 F. Supp. at 282 (holding that "common elements [that]

are found in many other well-known songs ... are unoriginal and constitute 'scenes a faire' or

ordinary, unprotectable expression"); *Rose*, 2018 WL 626350, at *3.

> **2.     Plaintiff Cannot Establish Substantial Similarity And Actionable Copying Under Any Standard, Including Under The Fragmented Literal Similarity Test**

In its prior Decision, the Court held that Plaintiff's copyright-infringement complaint was

not susceptible to dismissal pursuant to the fragmented literal similarity analysis on a Rule

12(b)(6) motion, because "discovery is necessary to shed light on the qualitative significance of

the guitar riff [*i.e.*, the Introduction] to the rest of the song, so the Court cannot resolve whether

the copying goes to trivial or substantial elements of the original work at this stage as a matter of

law."  Decision, at 7.  Summary judgment is now warranted because discovery has closed and

the undisputed record establishes that the Introduction is qualitatively, as well as quantitatively,

insignificant.[21]

Because Plaintiff cannot meet his burden to identify *any* protectable expression in the

---

[21] Notably, this "test in all cases considers only 'the qualitative and quantitative significance of the copied portion in relation to the ***plaintiff's work*** as a whole.' ***Its significance to the defendants' works is irrelevant.***"  *TufAmerica, Inc.*, 67 F. Supp. 3d 590, 597 (S.D.N.Y. 2014) (quoting *TufAmerica*, 968 F. Supp. 2d at 598).

Introduction used in "Paper Chase" or "Toe 2 Toe," as there is none, Plaintiff's claims must fail

as a matter of law, including under the fragmented literal similarity test:

> In determining substantial similarity in the qualitative sense, a court considers the nature of the copying: did the defendant copy important features of the plaintiff's **protected** expression? … In determining substantial similarity in the quantitative sense, a court determines how much of the plaintiff's **protected** expression has been copied.

*Rose*, 2018 WL 626350, at *4 (citing *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166

F.3d 65, 70-71 (2d Cir. 1999)).  As this holding makes clear, the *sine qua non* of substantial

similarity, including under the fragmented literal similarity test, is whether the plaintiff can meet

its burden of proving that there has been copying of **protectable** expression.  Plaintiff cannot

meet that burden.

   In addition to that dispositive undisputed fact—that the musical compositional elements

in the Introduction are not protectable, *i.e.*, not owned by Plaintiff—there are additional

undisputed facts that also establish that those compositional elements in the Introduction are both

quantitatively and qualitatively insignificant to "Help Me."  The Introduction is a minimal part of

"Help Me"; when played it constitutes a mere five seconds out of a total 192 seconds.  SUF ¶ 7.

It represents less than 3% of the "Help Me" composition.  SUF ¶ 7.  As Dr. Ferrara explains in

his report:  "The only musical material at issue in ['Help Me'] is a melody that appears only

briefly and only once in the five-second Intro (Introduction) of ['Help Me'], which the Bennett

Report calls a three bar guitar riff.  That melody does not repeat in any other part of ['Help Me'],

and has no connection to any other melodies found elsewhere in ['Help Me']."  SUF ¶¶ 5, 7-9.

Dr. Ferrara concludes that the Introduction of "Help Me" also lacks qualitative significance

because it merely constitutes the use of a "stock device" (*i.e.*, "Mysterioso Pizzicato").  SUF

¶¶ 65-67.  Underscoring its lack of qualitative significance, the Introduction is not even

contained in the Help Me Deposit Copy.  SUF ¶ 16.[22]

*Rose* is instructive.  In *Rose*, a composer brought a copyright infringement action against

the band U2 and UMG Recordings, Inc. for allegedly copying fragments from his composition

"Nae Slappin" to create a guitar solo for the U2 song "The Fly."  *Rose*, 2018 WL 626350, at *1.

First, the *Rose* court held that copying of a thirteen-second fragment, from an over three-and-a-

half-minute composition entitled "Nae Slappin," was "not quantitatively significant."  *Id.* at *5.

It confirmed that "while there is no threshold number or percentage to establish quantitative

significance, where 'the copyrighted work contains both original and unprotected elements, a

higher quantity of copying is required to support a finding of substantial similarity than when the

infringed work is wholly original.'"  *Id.* at *4 (quoting *Nihon*, 166 F.3d at 71); *see also Newton*,

388 F.3d at 1195 (three-note segment lasting six seconds of a four-and-a-half-minute

composition was quantitatively insufficient to establish substantial similarity).  As discussed

*supra*, there is **no** copying of protectable expression belonging to Plaintiff at all.  The

Introduction is duplicative of the stock "Mysterioso Pizzicato" phrase, adding nothing other than

an unprotectable "C" note (**which is not even in the allegedly infringing works**), and making

one existing note (that is in the public domain) syncopated.  SUF ¶ 49.  Second, with respect to

the allegedly infringed portion of plaintiff's composition, the *Rose* court also held that:

> … [I]t is not qualitatively significant, when measured against the entirety of
> plaintiff's composition. **The fragment appears only once near the beginning of**

---

[22] Plaintiff's vague, unsupportable and non-factual statements from his expert's report that the Introduction "is qualitatively distinctive, and, being an unaccompanied intro, could be considered a very important and memorable part of 'Help Me'" carries no weight here in the face of the undisputed facts.  *TufAmerica*, 67 F. Supp. 3d at 596 ("the Court … evaluates qualitative significance by reference to the allegedly infringed work, not to plaintiff's descriptions … . What matters is the relevant portion of the plaintiff's work itself, not the adverbs and adjectives that imaginative counsel use to describe it.").

*the recording; it is not repeated.*[23]

*Rose*, 2018 WL 626350, at *5.  The same analysis applies here, based upon even more

compelling dispositive, undisputed facts establishing the lack of copyright protection in the

compositional elements of the Introduction allegedly copied.  SUF ¶ 49.

      **C.**      **In The Alternative, The Court Should Grant Partial Summary Judgment**
                  **Establishing A Cap On Plaintiff's Potential Damages**

            **1.**      **Hines Has No Copyright Registration For The Allegedly Infringed**
                        **Introduction That Predates The Alleged Infringements; Thus, Even If**
                        **This Action Survives, Plaintiff Is Not Entitled To Statutory Damages**
                        **Or Attorneys' Fees**[24]

      Plaintiff cannot obtain attorneys' fees or statutory damages under the U.S. Copyright Act

against Defendants under any circumstances because there is no copyright registration for "Help

Me" which contains the allegedly infringed Introduction, ***and*** which was filed prior to the

alleged infringements at issue.  As a court in this District recently explained:

                Section 412 of the Copyright Act provides in plain language that "no award of
                statutory damages or of attorney's fees, as provided by sections 504 and section
                505, shall be made for—(1) any infringement of copyright in an unpublished

---

[23] Court have considered fragments qualitatively significant where they "encapsulate the
overriding theme of the song" (*May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 186 (S.D.N.Y.
2019)), are "especially important [] to the message conveyed by, or the theme presented in, the
[overall] [c]omposition" (*TufAmerica,* 67 F. Supp. 3d at 596-97), or where they represent "the
heart of the composition."  *Id.*  There is no protectable expression in the Introduction to which
the qualitative similarity analysis can even be applied.  However, it is worth noting that there is
*nothing* about the (unprotectable) Introduction to "Help Me" that is remotely important—let
alone especially important—to the message of "Help Me."  The overall composition of "Help
Me" concerns a lovesick narrator who cannot overcome his intense feelings (the "flame" in his
"heart") for the object of his desire; this intensity is reflected in the lyrics; the driving backbeat;
and the vocals.  The Introduction of "Help Me" contains none of these characteristics.  It is
purely instrumental; devoid of lyrics; and it is evocative of Halloween or the nefarious deeds of a
movie villain, as opposed to the lovelorn narrator of the rest of the composition.

[24] After dismissal, Defendants reserve the right to seek costs and fees under the U.S. Copyright
Act.

work commenced before the effective date of its registration; or (2) any
infringement of copyright commenced after first publication of the work and
before the effective date of its registration, unless such registration is made within
three months after first publication of the work." 17 U.S.C. § 412.

*Yague v. Visionaire Publ'g LLC*, No. 19-CV-11717 (LJL), 2021 WL 4481178, at *1 (S.D.N.Y.

Sept. 29, 2021).  "Section 412 is intended to provide additional remedies of statutory damages

and attorney's fees as incentives to register."  *Id.*

The only copyright registration for "Help Me" which predates the release of "Paper

Chase" and "Toe 2 Toe" is the 1969 Registration (and a renewal thereof from 1997).  SUF ¶¶ 15-

17.  The deposit copy of sheet music for "Help Me" which accompanied the 1969 Registration

did ***not*** include the allegedly infringed Introduction.  SUF ¶ 16.  Thus, Plaintiff does not have

any copyright registration for "Help Me" which both contains the allegedly infringed musical

compositional phrase ***and*** predates the release of "Paper Chase" and "Toe 2 Toe."  SUF ¶ 68.

Rather, Plaintiff only filed a copyright registration application for "Help Me" which included the

Introduction for the first time in June of 2019, years after first publication of the work.  SUF

¶ 69.[25]  However, June 2019 was two decades after the alleged infringements, which purportedly

occurred in 1998 (for "Paper Chase") and in 1999 (for "Toe 2 Toe").

Accordingly, Plaintiff cannot obtain statutory damages or attorneys' fees under the U.S.

Copyright Act under any circumstance.  *See* 17 U.S.C. § 412; *Nicholls v. Tufenkian*

*Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) ("[A] copyright does

---

[25] Specifically, over 20 years after the alleged copying at issue, Plaintiff applied for a new
registration for the "Help Me" composition.  SUF ¶ 69.  The new registration, PA 2-184-476,
was applied for on June 3, 2019, issued on June 28, 2019, and purportedly included unidentified
"additional music & lyrics."  SUF ¶ 69.  Plaintiff also filed yet another registration application
on June 21, 2019, for a so-called "addendum" registration for "Help Me," RE0000932464, which
registration was issued on or about June 26, 2019.  SUF ¶ 70.

not encompass [elements] that vary in essential respects from what was presented to the Copyright Office.  Otherwise, the purposes of the deposit requirement would be nullified."); *see also Skidmore v. Zeppelin*, 952 F. 3d 1051, 1058 (9th Cir. 2021) (affirming that in a copyright infringement action, "the scope of the copyright [in the allegedly infringed work] was circumscribed by the musical composition transcribed in the … deposit copy").

    2.    **Any Actual Damages Must Be Capped So They Do Not Exceed The Undisputed $4,705.63 In Gross Revenues Earned Within The Statute Of Limitations Period**

Since Plaintiff cannot obtain statutory damages or fees, he is limited to actual damages. Those are actual damages and any additional ***net*** profits of the alleged infringer attributable to the infringing use.  The Second Circuit has held that a "plaintiff's recovery is limited to damages incurred during the three years prior to filing suit" under 17 U.S.C. § 507.  *Sohm*, 959 F.3d at 52; *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014); *Hayden v. Koons*, No. 21 CIV. 10249 (LGS), 2022 WL 2819364, at *6 (S.D.N.Y. July 18, 2022) (granting the defendant's motion for a ruling limiting damages to the three-year period prior to the commencement of the action based on *Sohm*).  Also, 17 U.S.C. § 504 only allows a plaintiff to recover profits "that are attributable to the [alleged] infringement."

The undisputed evidence shows that from the beginning of the three-year lookback period to present, "Paper Chase" and "Toe 2 Toe" have earned, collectively, gross, $4,705.63.  SUF ¶¶ 25, 32.  Even if *arguendo* Plaintiff could establish liability—and he cannot—under the statutory apportionment analysis, Plaintiff could only recover, at most, a ***fraction*** of the revenue of ***$4,705.63***.  His damages must be capped to not exceed that gross amount.

V.    **CONCLUSION**

Defendants respectfully request that the Court grant their motion for summary judgment.

24

DATED:  New York, New York
            November 4, 2022

MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Jeffrey M. Movit             
    Christine Lepera
    Jeffrey M. Movit
    437 Madison Ave., 25th Floor
    New York, New York 10022
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239
    Email: ctl@msk.com
    Email: jmm@msk.com

    *Attorneys for Defendants W Chappell Music Corp., Shawn Carter, and Timothy Mosley*