UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERNIE HINES,

                       Plaintiff,

-v-

BMG RIGHTS MANAGEMENT (US) LLC, *et al.*,

                       Defendants.

20-CV-3535 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Ernie Hines brings this copyright infringement action against W Chappell Music Corporation and the artists known as Jay-Z, Timbaland, and Ginuwine. Hines, who is the author of 1960s soul single "Help Me Put Out The Flame (In My Heart)" ("Help Me"), asserts that Defendants unlawfully used the introduction to his song in two of their modern-day hip-hop songs, "Paper Chase" and "Toe 2 Toe."

Before the Court are two motions for summary judgment, one filed by Ginuwine, and the other filed by W Chappell Music Corporation, Jay-Z, and Timbaland (collectively, the "Warner Defendants"). Hines also moves for this Court to reconsider its decision to deny his request to extend the period of discovery. For the reasons that follow, both Ginuwine's and the Warner Defendants' motions for summary judgment are granted, and Hines's motion is denied.

I.     Background

    A.     Factual Background

The following facts are drawn from the Warner Defendants' Local Rule 56.1 Statement (ECF No. 186 ("Defs.' SOF")), Plaintiff's Opposition to the Warner Defendants' Local Rule 56.1 Statement (ECF No. 207 ("Pl.'s SOF Opp.")), the Warner Defendants' Opposition to Plaintiff's Statement of Additional Facts (ECF No. 219 ("Defs.' SOF Opp.")), and the

underlying evidence cited therein.  The facts recited here are undisputed unless otherwise noted, and they are construed in the light most favorable to the non-movant.

Hines is a co-author and co-owner of the copyright in a soul record entitled "Help Me Put Out The Flame (In My Heart)."  (Defs.' SOF ¶ 1; Pl.'s SOF Opp. ¶ 2.)  The U.S. Copyright Office issued a copyright registration for Help Me in 1969, and the copy of work that was submitted to the Copyright Office in connection with the song's registration did not include the allegedly copied material at issue here.  (Pl.'s SOF Opp. ¶¶ 15-16.)  The 1969 registration (which Hines renewed in 1997) is the only copyright that was issued to Hines for Help Me prior to the commercial releases of Paper Chase and Toe 2 Toe in 1998 and 1999, respectively.  (Pl.'s SOF Opp. ¶¶ 17-18, 26.)  Paper Chase was co-written by Timbaland and Jay-Z, and Toe 2 Toe was co-written by Timbaland and Ginuwine.  (Defs.' SOF ¶¶ 20, 28.)[1]

At issue in this case is a three-bar guitar riff without any vocals at the beginning of Help Me (the "Introduction").  (Defs.' SOF ¶¶ 5-6.)  Help Me runs for 192 seconds in total, and the Introduction is about six seconds long.  (Pl.'s SOF Opp. ¶ 7; ECF No. 217 at 9.)  The Introduction does not repeat in any other part of Help Me, nor does its melody have any connection to the other melodies found in the song.  (Defs.' SOF ¶¶ 8-9.)  The parties agree, for the purpose of these motions, that some of the notes from the Introduction in Help Me were used throughout both Paper Chase and Toe 2 Toe without Hines's permission.  (Defs.' SOF Opp. ¶¶ 75-76; ECF No. 187 at 15 n.18.)

---

[1] Hines filed a supplemental copyright registration for Help Me in 2019, in which he purported to add additional music and lyrics to the deposit copy of the work.  (*See* Pl.'s SOF Opp. ¶¶ 16-17, 69; ECF No. 187 at 23 & n.25.)  While the parties appear to dispute the effect that 2019 registration had on Hines's original 1969 copyright, that dispute is relevant only to the amount of damages Hines could be awarded were he to prevail, an issue that this Court does not reach.

### B. Procedural History

On May 18, 2019, Plaintiff filed suit against four record labels, Jay-Z, and Timbaland, asserting copyright infringement. This Court granted Jay-Z's and Timbaland's motions to dismiss Hines's complaint for insufficient service of process, as well as the record labels' motion to dismiss for failure to state a claim. *Hines v. Roc-A-Fella Records, LLC*, No. 19-CV-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020). While that decision granted Hines leave to amend his complaint, he instead filed the instant action on May 6, 2020, again asserting copyright infringement claims again Jay-Z and Timbaland, among other defendants. (ECF No. 1.) After Hines filed a second amended complaint, this Court denied a motion to dismiss for failure to state a claim, brought by the Warner Defendants and one other defendant. *Hines v. W Chappell Music Corp.*, No. 20-CV-3535, 2021 WL 2333621 (S.D.N.Y. June 8, 2021). (ECF No. 78.) Hines subsequently filed a Third Amended Complaint, now the operative complaint, adding Ginuwine as a defendant and adding a claim for unjust enrichment. (ECF No. 149.) This Court then granted a motion brought by Defendants to dismiss Hines's unjust enrichment claim. *See Hines v. W Chappell Music Corp.*, No. 20-CV-3535, 2022 WL 3646206 (S.D.N.Y. Aug. 23, 2022). (ECF No. 172.)

The parties had proceeded to discovery in the meantime, and on October 24, 2022, this Court denied a motion by Hines to extend the deadlines for discovery. (ECF No. 178.) On November 3, 2022, Hines filed a motion for reconsideration of that order. (ECF No. 179.) On January 3, 2023, the Warner Defendants filed an opposition to that motion, to which Hines filed a reply on February 28, 2023. (ECF Nos. 199, 220.) The parties' summary judgment briefing also proceeded in parallel, as the Warner Defendants and Lumpkin each moved for summary judgment on November 4, 2022. (ECF Nos. 181, 188.) On January 13, 2023, Hines filed an

opposition to those motions (ECF No. 204), and the Warner Defendants and Lumpkin each filed a reply on February 28, 2023 and March 3, 2023, respectively (ECF Nos. 217, 223). Before this Court now are Hines's motion for reconsideration of this Court's denial of his requested extensions, as well as the Warner Defendants' and Lumpkin's motions for summary judgment.[2]

## II. Legal Standard

To survive summary judgment, a nonmovant must raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). To raise such an issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, a nonmovant "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted). Rather, they "must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The movant can prevail if, after discovery, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant does produce evidence tending to exclude the possibility of a genuine dispute of material fact, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

---

[2] Defendant Ginuwine filed a motion for summary judgment (ECF No. 188), and his counsel filed a declaration stating that Ginuwine incorporates all the assertions and arguments in the Warner Defendants' motion for summary judgment (ECF No. 189). Hines asserts that Lumpkin somehow abandoned the opportunity to move for summary judgment (ECF No. 204 at 23-24), but Ginuwine made clear that he was "request[ing] an order granting summary judgment in Defendant's favor" (ECF No. 189 ¶ 3). This Court's grant of summary judgment therefore applies to all Defendants, including Ginuwine.

**III.    Discussion**

The Court first considers Hines's motion for reconsideration of this Court's denial of his requested extension of discovery deadlines, as well as a request by Defendants to exclude Hines's supplemental expert materials. This Court then considers Defendants' motions for summary judgment. Although the parties also dispute the maximum amount of damages if Hines were to prevail in this action, the Court does not reach that issue because it grants both of Defendants' motions for summary judgment.

**A.    Discovery and Timeliness of Materials**

As an initial matter, Hines moves for reconsideration of this Court's denial of his motion to extend discovery-related deadlines. (ECF No. 179.) "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Accordingly, "[t]he threshold for prevailing on a motion for reconsideration is high." *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010) (summary order). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cioce v. County of Westchester*, 128 F. App'x 181, 185 (2d Cir. 2005) (summary order) (internal quotation marks and citation omitted).

Hines asks the Court to reconsider its decision and argues that the Court did not properly account for certain personal conflicts (*see* ECF No. 180), but that argument was already presented to the Court prior to its initial ruling. Moreover, the Court provided multiple rationales in its original order that remain pertinent, such as the fact that the parties have already had one year to complete fact discovery (pursuant to a deadline that has already been extended twice),

5

and that the new material Hines sought through discovery was not proportional to the needs of the case. (ECF No. 178.) Accordingly, the Court denies Hines's motion for reconsideration of the denial of an extension of time to conduct discovery, and the parties remain bound by the (already extended) discovery deadlines previously ordered.

In recognition of those deadlines, the Warner Defendants request that this Court exclude certain materials from Hines's expert, Dr. Bennett, that were newly appended to Hines's opposition to Defendants' motions for summary judgment. (ECF No. 217 at 2-3.) This Court agrees with the Warner Defendants that those materials, which include an affidavit, a supplemental report responding to Dr. Ferrara's report, and a video analysis comparing Hines's work to other works, are untimely and should not be considered. (*See* ECF Nos. 204-5, 205). Those materials were submitted after the close of expert discovery, and under Federal Rule of Civil Procedure 37(c)(1), if a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The purpose of that rule is to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).

Hines has offered no reason that this Court should consider his untimely materials. The supplemental materials include a video in which Dr. Bennett offers additional analysis comparing Help Me to Paper Chase, Toe 2 Toe, and Mysterioso Pizzicato, a musical work in the public domain whose similarity to Help Me is disputed by the parties. (ECF No. 205.) Dr. Bennett referred to all those works in his original report, however, and Rule 26 "is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency

6

through the expedient of a 'supplemental' report." *Anthem, Inc. v. Express Scripts, Inc.*, __ F. Supp. 3d __, 2023 WL 2402783, at *11 (S.D.N.Y. 2023) (internal quotation marks and citation omitted). Permitting "the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect" would "render the completeness requirements of Rule 26(a)(2)(B) meaningless." *Id.* (internal quotation marks and citation omitted); *see also Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-CIV-5474, 2008 WL 857492, at *13 (S.D.N.Y. Mar. 31, 2008) (excluding untimely affidavit attached to a plaintiff's opposition to a motion for summary judgment because the delay "prejudiced the defendant," who "made the summary judgment motion on the record established at the close of discovery").

As a result, the Court considers only the September 8, 2019 expert report of Dr. Joe Bennett prepared for Hines (*see* ECF Nos. 38-1; 204-2), as well as the September 29, 2022 expert report of Dr. Lawrence Ferrara, prepared for the Warner Defendants (*see* ECF No. 182-1), which constitute the expert materials that were disclosed before the relevant deadlines elapsed.

### B.     Copyright Infringement

To demonstrate copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To show the second prong of unauthorized copying, the plaintiff must "first show that his work was actually copied," and then "second, he must establish 'substantial similarity'" between the allegedly infringing work and protected expression in his work. *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (internal quotation marks and citation omitted).

The parties do not dispute the first prong — that Hines has a valid copyright in the musical composition of Help Me. (Pl.'s SOF Opp. ¶¶ 15, 17.) Nor do the parties dispute the actual copying component of the second prong, as Defendants concede, for the purposes of this litigation, that Paper Chase and Toe 2 Toe copied notes from the Introduction without Hines's permission. (Defs.' SOF Opp. ¶¶ 75-76; ECF No. 187 at 15 n.18 ("[S]olely for purposes of this motion," the Warner Defendants "assume . . . that the Introduction section of the Help Me Recording was sampled in the sound recordings of 'Paper Chase' and 'Toe 2 Toe' . . . ."))

The parties do dispute, however, two key issues. First, the parties contest whether the Introduction is original enough to be protected by copyright. Second, even if the Introduction is protected by copyright, the parties disagree on whether the allegedly infringing works copied protectable elements in Help Me in a significant enough manner to constitute copyright infringement. This Court addresses each issue in turn.

### 1. The Introduction's Eligibility for Copyright Protection

Because copyright law protects only "the expression of ideas" and "not the ideas themselves," certain elements of works are not copyrightable. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67 (2d Cir. 2010). A "threshold question" in determining whether copyright infringement has occurred is "what characteristics of [plaintiff's work] have gained copyright protection," as such protection "extends only to those components of a work that are original to the author." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) (internal quotation marks and citation omitted). Originality is therefore the "*sine qua non* of copyright" and represents "the touchstone of copyright protection." *Feist*, 499 U.S. at 347-48.

Defendants argue that the Introduction is ineligible for copyright protection because it is drawn from a "stock, public domain phrase from a 1914 work" — Mysterioso Pizzicato, or

"MP" — that "has been used multiple times since then" and "is available to all music creators to borrow in building their own works." (ECF No. 187 at 18.)  To support their argument, Defendants submit a report by Dr. Ferrara, which compares the Introduction to MP, as well as to at least twenty-eight songs that also use the same stock device found in MP.  (ECF No. 182-1.)  Based on that analysis, Dr. Ferrara concluded that the only musical material contained in the Introduction that is distinct from the numerous prior examples are two elements:  one additional "C" note that does not appear in the allegedly infringing works, and a single note that is played off beat.  (ECF No. 182-1 at ¶¶ 50, 61, 62; ECF No. 187 at 18-19.)

Here, the Introduction borrows from a heavily used work that is in the public domain, and it adds only material that is not original enough to be copyrightable.  Authors and artists cannot claim copyright in "the raw materials of art," such as "previous creative works that have fallen into the public domain," as well as "the basic building blocks of music, including tempo and individual notes."  *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 332 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).  Under that principle, "[p]hrases that 'enjoy[] a robust existence in the public domain' are not protectible."  *Id.* (quoting *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998)).  As a result, courts have found that "common melodies" are "unprotectable elements" under copyright law.  *Griffin v. Sheeran*, 351 F. Supp. 3d 492, 497 (S.D.N.Y. 2019); *see also Jean v. Bug Music, Inc.*, No. 00-CIV-4022, 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (a sequence of notes that "commonly appears in music" is not protectable).  Thus, even if Hines holds a valid copyright in Help Me more generally, he "may receive protection only for his original additions" to a work that is "already in the public domain."  *See Stewart v. Abend*, 495 U.S. 207, 234 (1990).

Even so, Hines also cannot claim copyright in the elements he added to MP. The Introduction's additions of a single note and a single different rhythm — which is how Dr. Ferrara characterizes the Introduction's contributions above and beyond MP — do not render the Introduction protectable. *See Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) ("[A] single musical note would be too small a unit to attract copyright protection . . . ."); *McDonald v. Multimedia Ent., Inc.*, No. 90-CIV-6356, 1991 WL 311921, at *3 n.2 (S.D.N.Y. July 19, 1991) ("[I]t is extremely doubtful that [a] single note and its placement in the composition is copyrightable."); *see also McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015) (explaining that "common rhythms" are not copyrightable); *Lane v. Knowles-Carter*, No. 14-CIV-6798, 2015 WL 6395940, at *5 (S.D.N.Y. Oct. 21, 2015) (same). Thus, even if Hines conceived of the Introduction on his own (*see* ECF No. 204 at 11-12), what he claims copyright in is not protectable. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1071 (9th Cir. 2020) (en banc) (rejecting an argument "that a work is original as long as it was independently created," as "originality requires at least 'minimal' or 'slight' creativity . . . in addition to independent creation" (citing *Feist*, 499 U.S. at 345-46)).

Indeed, even Hines's expert report, authored by Dr. Bennett, acknowledges that the Introduction "contains a musical allusion to the famous *Mysterioso Pizzicato* (aka the 'movie villain's theme'), a melody that appeared first in 1914 and was common in silent film in the early 20th century (and is presumably non-copyright)." (ECF No. 204-2 at 4.) Dr. Bennett then goes on to opine that the Introduction "uses some different pitches and rhythmic values from MP, and should therefore be considered an original melody composed by Hines." (*Id.*) But Dr. Bennett offers no other analysis about what those distinctions are, and the rest of his report focuses on whether the allegedly infringing works actually copied the Introduction, which is a fact that

Defendants do not dispute. In contrast, Dr. Ferrara's report goes into detail on the few differences between the Introduction and MP and related works, and as explained earlier, those differences are not significant enough to merit copyright protection.

To be sure, Hines vigorously disputes Defendants' characterization of how similar the Introduction is to prior works in the public domain, such as MP. (*See* Pl.'s SOF Opp. ¶¶ 38-49.) But Hines's objections are vague and conclusory, and the only evidence Hines marshals to contradict Dr. Ferrara's observations lie in the untimely Dr. Bennett materials, which this Court declines to consider. Dr. Ferrara's analysis is therefore authoritative on the issue, and his analysis demonstrates that the Introduction is not protected under copyright. *See Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 7-8 (2d Cir. 2019) (summary order) (summary judgment is appropriate when the "party opposing summary judgment fails to present evidence sufficient to make an issue of an expert's conclusion," which renders the expert's analysis "unequivocal, uncontradicted, and unimpeached").

In any event, were this Court to consider Dr. Bennett's supplemental materials, this Court would not reach a different outcome. In attempting to distinguish the Introduction from MP, Hines and Dr. Bennett point to elements such as the "picking techniques" used to play the guitar, as well as the "selection of the particular guitar" used to record the Introduction. (ECF No. 204 at 20-21.) But those elements all draw on the sound recording of Help Me, which Hines's copyright does not cover. Rather, Hines's copyright is for only the song's musical composition and not its recording, and a copyright for the former does not encompass one for the latter. *Rose v. Hewson*, No. 17-CV-1471, 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018) ("In copyright cases alleging infringement of a musical composition, a court considers only a song's composition — the notes, rhythm, and harmony, for example — and does not consider elements

11

of performance of the composition . . . ." (citing *Newton v. Diamond*, 349 F.3d 591, 596 (9th Cir. 2003)).[3]

### 2. Substantial Similarity

Defendants also argue that Hines cannot establish substantial enough similarity between the allegedly infringing works and Help Me to support a triable claim of copyright infringement. This Court agrees. Thus, even if Hines could somehow claim copyright protection in the Introduction, his claim for copyright infringement would still fall short.

When a work "contain[s] both protectible and unprotectible elements," courts "must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis removed). The "Second Circuit has recognized a number of different tests that courts can apply in determining the extent of similarity" between two works. *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 596 (S.D.N.Y. 2013). One of those tests is the "fragmented literal similarity" test, which is appropriate "where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure" — precisely the situation here. *Id.* at 597 (quoting *Newton*, 388 F.3d at 1194). Under that approach, the relevant similarity is "measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole," and the copying of a small portion of the pre-existing work may still give rise to liability if it "is of great qualitative importance" to the

---

[3] Hines purports to dispute whether his copyright is for the sound recording of Help Me. (Pl.'s SOF Opp. ¶ 4.) But his objection consists solely of a citation of the underlying copyright registration documents (*see* ECF No. 208-4, 208-5, 208-6), which are for the musical composition of Help Me and not for a sound recording of the work.

plaintiff's work as a whole. *Id.* at 598 (internal quotation marks and citation omitted). Although the question of substantial similarity is often answered by a jury, the Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law." *Gaito*, 602 F.3d at 63.

Here, Hines cannot show either quantitative or qualitative significance on the present record. On quantitative significance, the undisputed facts demonstrate that the Introduction is a three-bar guitar riff that runs for a maximum of six seconds out of 192 seconds, measuring barely three percent of Help Me in total. (Defs.' SOF ¶¶ 5-7.) The brevity of the Introduction suggests a lack of quantitative significance. *See, e.g.*, *Newton*, 388 F.3d at 1195-96 (concluding that "no reasonable juror could find" actionable similarity based on the use of a sample that "lasts six seconds and is roughly two percent of the four-and-a-half-minute" work); *Rose*, 2018 WL 626350, at *5 (concluding on a motion to dismiss that "[a]t thirteen seconds, which amounts to six percent of the recording, the fragment is not quantitatively significant" to the plaintiff's work). On qualitative significance, it is undisputed that the Introduction is not repeated anywhere else in Help Me and that its melody is unrelated to any other melody found in the song. (Defs.' SOF ¶¶ 8-9.) Those, too, are factors other courts have cited as precluding the existence of qualitative significance. *See, e.g.*, *Newton*, 388 F.3d at 1195-96 ("[T]he three-note sequence appears only once in [the] composition" and "is no more significant than any other section"); *Rose*, 2018 WL 626350, at *5 (concluding that a fragment is "not qualitatively significant" because it "appears only once near the beginning of the recording" and "is not repeated"). Tellingly, Hines did not even think to include the Introduction in his deposit copy when he first registered the copyright for Help Me in 1969, and he endeavored to add the

13

Introduction to the deposit copy only in a supplemental registration in 2019. (Pl.'s SOF Opp. ¶ 16.)

Hines attempts to show substantial similarity by citing Dr. Bennett's analysis, which finds that Paper Chase and Toe 2 Toe sample the Introduction for 84% and 100% of their runtimes, respectively. (ECF No. 204 at 18.) But Hines misunderstands the relevant question, which is "whether the similarity relates to matter that constitutes a substantial portion of [the pre-existing] work — not whether such material constitutes a substantial portion of [the allegedly infringing] work." *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 94 (S.D.N.Y. 2015) (quoting *TufAmerica*, 968 F. Supp. 2d at 599).

On the relevant question, which is the quantitative and qualitative significance of the Introduction to *Hines's* own work, Hines gets no further. He appears to concede, as he must, that the Introduction is not quantitatively significant to Help Me. Instead, he argues that a small portion of a work can still be qualitatively significant, and that the Introduction fits that description. (ECF No. 204 at 21-23.) To start, much of Hines's argument about the qualitative significance of the Introduction derives from the untimely supplemental Dr. Bennett materials. But again, even if this Court were to consider those materials, the qualitative aspects that Hines cites — such as the "distinctive sound" created by the specific guitar used (ECF No. 204 at 20) — are unique to the sound recording, for which Hines cannot claim copyright. Moreover, when "the copyrighted work contains both original and unprotected elements, a higher quantity of copying is required to support a finding of substantial similarity than when the infringed work is wholly original." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999). Given the ubiquitous appearance of the notes in the Introduction in the public

domain, as well as Hines's minimal additions to those notes, no reasonable jury could find that the amount of copying here is sufficient to support a copyright infringement claim.

### IV.     Conclusion

For the foregoing reasons, Hines's motion to reconsider this Court's denial of his motion to extend discovery is DENIED and the Warner Defendants' and Ginuwine's motions for summary judgment are GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 179, 181, and 188, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: September 25, 2023
      New York, New York

_____
J. PAUL OETKEN
United States District Judge